[S. F. No. 6805.   Department Two.—December 17, 1915.]

## ALEXANDER LAMB et al., Respondents, v. AUGUSTA L. LAMB, Appellant.

TRUST—COMPROMISE JUDGMENT—PAROL AGREEMENT TO HOLD LAND IN TRUST—RELATIONS OF CONFIDENCE.—Where the parties interested in an action to impress with a trust land standing in the name of the defendant, all of whom occupied relations of great confidence to each other, in reliance on such relations and in consideration of the defendant's agreement to hold the land in trust for them, acquiesced in the compromise of the litigation and the entry of judgment for the defendant, the land affected by such judgment became impressed with a voluntary trust, which equity will enforce, notwithstanding it rests in parol.

ID.—STATUTE OF LIMITATIONS—REPUDIATION OF TRUST.—The statute of limitations did not commence to run against such trust in favor of a grantee of the land who had assumed the performance thereof until its repudiation.

APPEAL from a judgment of the Superior Court of Mendocino County, and from an order refusing a new trial. J. Q. White, Judge.

CLXXI Cal.—37

The facts are stated in the opinion of the court.

Mannon & Mannon, for Appellant.

Robert Duncan, for Respondents.

HENSHAW, J.—Plaintiffs by their action sought to have decreed and enforced against the defendant an involuntary trust. From the judgment in their favor and from the order denying defendant's motion for a new trial she appeals.

The complaint charged that Anna Slingerland in her lifetime owned some four hundred acres of land, with a small amount of stock and other personal property thereon. She was living upon this land with her married brother, Russell W. Lamb. She was the sister of plaintiff Alexander Lamb and the aunt of the other three plaintiffs, one of whom is the daughter of Russell W. Lamb. In addition to these relatives Anna Slingerland had another brother, Theodore Lamb, and a sister, Sarah Donaldson. The defendant was the wife and is now the widow of Russell W. Lamb, and is the stepmother of the plaintiff Geneva Klinke. In February, 1906, Anna Slingerland executed her will, bequeathing to plaintiffs Anna Buhlert and Charlotte Sharman the sum of five hundred dollars each, and to Geneva Klinke, daughter of Russell Lamb, of whom she was especially fond, the sum of two thousand dollars, and, after these legacies, devised and bequeathed the residue of her estate in equal shares to her brothers Alexander and Theodore and her sister Sarah. In September and October of the same year she made deeds of the land owned by her to her brother Russell, with whom she was living. The first deed attempted to convey 23.7 acres of the four hundred acre tract. The second deed conveyed all of the four hundred acre tract, excepting therefrom the 23.7 acres previously conveyed. At the time of the making of these conveyances Anna Slingerland, then of the age of seventy-three years, was extremely ill of a mortal affliction, which caused her death on the tenth day of the following November.

Very shortly after the death of Mrs. Slingerland, Russell Lamb wrote to his sister Sarah that the deceased sister had left her ranch for him to sell and divide the proceeds equally between her three brothers and her sister. This letter made

no mention of the legacies in the will. Anna Slingerland's will was probated and the executor brought his action on behalf of her estate to recover into the estate the lands so deeded to Russell. Russell contested this action and it resulted in a judgment in favor of the executor for the 23.7 acres, and in favor of Russell for the remainder of the tract. The executor moved for a new trial of the action so far as it awarded the remainder of the tract to Russell, and Russell in turn moved for a new trial against the award of 23.7 acres in favor of the estate. Thereupon, and while said motions were pending, Russell Lamb's brother Theodore and his sister Sarah brought their action to have it declared that he held the land in trust for the sister and brothers of Anna Slingerland, as in effect declared in his letter. These plaintiffs took no part in this litigation because of the relations of great trust and confidence which existed between them and Russell Lamb, and because he frequently stated to them and assured them that he did not propose to keep the land, but did propose to and would sell it and carry out to the fullest extent the will of Anna Slingerland, and that if he was not able profitably to sell the lands during his lifetime he would so arrange it that they should be disposed of and the legacies paid to the parties at or after his death. For these reasons they did not join in the litigation and in the compromise which was therein effected. By that compromise Russell Lamb paid to his brother Theodore and to his sister Sarah a sum of money, and, upon so doing, was permitted to take, and did take, judgment in his favor upon all the issues in the action commenced by them. Still further, and as a part of the compromise, the executor of the estate of Anna Slingerland allowed Russell Lamb to take, and he did take, a judgment in his favor for the 23.7 acres which had been awarded to the estate. The method by which this was accomplished was that by consent that portion of the judgment adverse to him was set aside and a new trial granted and judgment in Russell Lamb's favor thereupon immediately entered, and the motion of the executor for a new trial as to the remaining portion of the four hundred acres was denied and no appeal taken therefrom. As a further assurance of the good faith of Russell Lamb, he testified upon the trial of the action that he would never think of keeping all of said lands, but that it was his intention then

to sell the same and to divide the proceeds thereof according to the terms of Anna Slingerland's will. Defendant Augusta L. Lamb knew of all these matters and things and fully acquiesced in all of the terms and promises made by Russell Lamb touching the interests and rights of these plaintiffs. The 23.7 acres originally adjudged by the court to belong to the estate was at that time of the value of three thousand dollars, and this three thousand dollars, after the payment of necessary expenses, would have been available for the payment of the legacies to these plaintiffs. Plaintiffs were never advised or believed that Russell Lamb would do other than carry out his agreement with them and his promises so made. He died, however, without doing so. Before his death he conveyed to his wife, defendant herein, the property which he had thus received from Anna Slingerland, and this was the only property which he had at the time of his death. He conveyed this property to his wife, however, under the trust and with the same understanding and agreement that she would sell or dispose of it and out of the proceeds carry out the promises and agreements which he had made to the plaintiffs, and this defendant promised her husband and agreed at the time of the conveyances so to do, and it was in reliance upon her promises that Russell Lamb so conveyed the property to her without performance by himself of the promises made to plaintiffs. After thus securing the property, and after the death of Russell Lamb, defendant repudiated her agreement and. trust and sold the property for a large sum of money and for other valuable lands.

The court's findings are, generally speaking, in strict accord with this statement of facts. The court further finds that Anna Slingerland did in fact convey these lands to Russell Lamb upon the trust that he would carry out the terms of her will; that this trust was known to the defendant; that she acquiesced in the promises of the performance of the trust repeatedly and continuously made by Russell Lamb to the plaintiffs, and that after the death of Russell Lamb she stated to the plaintiffs, and led them to believe, that she would sell the lands and carry out the promises of Russell to the plaintiff and pay each of them the amounts bequeathed to them by the will of Anna Slingerland, and that it was in reliance upon his wife's assurance that she

would do this thing, and for no other consideration, that Russell Lamb conveyed the property to her. By its decree the court ordered an execution of the trust.

Such being the facts, this appeal, we think, is susceptible of disposition with but brief consideration of the questions presented. All of the plaintiffs had an interest in the litigation prosecuted against Russell Lamb. All of the plaintiffs in one of the actions were represented by the executor of Anna Slingerland's will, and the plaintiff, Alexander Lamb, had a direct interest in the litigation prosecuted against Russell Lamb by his brother and sister, because equally with them he was interested in the trust upon which Russell Lamb by his letter declared he held the land. The relations of confidence, their forbearance to take part in the litigation, their acquiescence in the compromise of all this litigation under the renewed promises of Russell Lamb to fulfill the terms of Anna Slingerland's will, formed, without regard to any trust created by Anna Slingerland, a good and valuable consideration for the promises and trust declared in favor of these plaintiffs by Russell Lamb himself. It is not here a question, as appellant seems to think, of judgments fraudulently obtained and a duty cast upon these plaintiffs to prosecute their action to avoid these judgments. It is the precise question presented by *Bradley Co.* v. *Bradley,* 165 Cal. 237, [131 Pac. 750]. It is an attempt by the defendant to make a fraudulent use of advantages which she received by judgments fairly obtained. It is not the judgments which these plaintiffs attack, but the fraudulent use of their apparent conclusiveness, when in fact the lands affected by them were impressed by a voluntary trust made as a part consideration for the entry of these judgments by the party who secured them. (*Thompson* v. *Laughlin,* 91 Cal. 313, [27 Pac. 752]; *Wood* v. *Rabe,* 96 N. Y. 414, [48 Am. Rep. 640].) Equity will, of course, enforce such a trust even when it rests in parol. (Civ. Code, sec. 2224; *Cooney* v. *Glynn,* 157 Cal. 584, [108 Pac. 506]; *Lauricella* v. *Lauricella,* 161 Cal. 62, [118 Pac. 430]; *Estate of Everts,* 163 Cal. 449, [125 Pac. 1058].)

Defendant's plea of the statute of limitations is without avail. The trust pleaded, by its very terms, might continue, and did continue, without repudiation upon the part of Russell Lamb during his lifetime. Indeed, it is found to have

continued in his wife as trustee after his death. Only upon her repudiation did the statute of limitations begin to run.

It is argued against this that the finding is ineffective to show that Russell Lamb's conveyance to his wife was made in trust, the court using the language "from those facts and other facts found herein." But there is sufficient in the facts found, as, for example, in the specific fact that defendant represented to the plaintiffs after the death of Russell Lamb that she would carry out his promises; that she had always known of these promises and had acquiesced therein, to support this particular ultimate fact, while, in addition to this, the evidence supporting it is abundant.

It was stipulated that defendant had received five hundred dollars rents of the property. The court awarded to plaintiff Alexander Lamb one-fourth of these rents as being his share of the one-fourth interest in the property and its rents and profits after the date of the judgments in favor of Russell Lamb. It would appear, in the first place, that this was error, as the stipulation was to the effect that the defendant had received the sum of five hundred dollars as the rents of the property after the death of her husband. But Alexander Lamb being decreed a fourth interest in the property was equally entitled to his fourth interest in the rents and profits after the repudiation of the trust by the trustee who held it all.

No just ground of complaint can be made because the court decreed all of the land of Anna Slingerland which Russell Lamb secured by her deeds and the compromise judgments to have been embraced in the trust.

The judgment and order appealed from are therefore affirmed.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.