[Civ. No. 2923. First Appellate District, Division One.—August 22, 1919.]

NELLIE S. HUGHES, as Executrix, etc., Respondent, v. CHARLES F. SILVA, Appellant.

[1] TRUSTS—ACTION TO IMPRESS ON LANDS—CONFLICTING EVIDENCE—FINDING AND JUDGMENT.—In this action, wherein plaintiff's predecessor in interest sought to impress a trust in his favor as to several tracts of land and for an accounting as to each of such properties, the findings and judgment of the trial court sustaining the plaintiff's contention as to the existence of a trust relation as to one of said tracts, and as a result of an accounting taken as to said tract, decreeing that plaintiff recover from defendant one-half of the net amount it found defendant realized as to such holding (the findings and judgment being in favor of the defendant as to the other tracts), based as they were upon the substantially conflicting testimony of the two original parties as to the facts pertaining to their relation and dealings in respect to the tract in question during a long series of years, cannot be said not to be supported by the evidence.

[2] ID.—ORAL UNDERSTANDING — CREATION OF TRUST — EFFECT OF DECLARATIONS BY TRUSTEE.—An oral understanding between two parties whereby certain property is to be acquired in the name of

2. Creation of trust in land by parol, note, 115 Am. St. Rep. 774.

Parol agreement to take title to real property, sell the same and account for the proceeds, as affected by statute of frauds, note, 20 L. R. A. (N. S.) 298.

42 Cal. App.—50

one of them, a one-half interest therein to be held in trust for the other, may give rise to an enforceable trust in favor of the latter. Such a trust can at the same time be an express and a resulting trust, and the fact that the trustee of such trust makes a written declaration of trust does not change the character of the trust itself, but merely furnishes additional proof of its existence.

[3] ID.—LOAN OF MONEY TO BENEFICIARY BY THIRD PERSON—USE IN PURCHASE OF PROPERTY—PAYMENT BY TRUSTEE—EFFECT OF.—The fact that the declarations of trust in this case, which were executed by the defendant in connection with the making and renewal of the beneficiary's note to a third person who had loaned such beneficiary money which was used in making the initial payment on the property sought to be impressed with the trust, were made with express reference to the transaction with said third person and expressly declared the existence of a trust entitling said beneficiary to an equitable interest in the property, and in its proceeds in the event of sale of such interest, in order to pay said note, and the further fact that the defendant, and not said beneficiary, paid the same in no wise changed the status of the property or the relationship of the parties, since according to the original understanding of the parties the entire purchase price of the property was to be paid out of itself, and this was what was actually done.

[4] ID.—DEMAND FOR AN ACCOUNTING—DELAY—LACHES.—Where, during the term of years that elapsed between the time of the creation of the trust and the sale of the property, the relation between plaintiff and defendant was intimate and cordial, and down to a short time before the sale of the property its character and value remained about the same as when it was purchased by them, there was no reason for balancing the accounts between them; therefore, plaintiff was not guilty of laches in not demanding an accounting earlier, where he did so a short while after an unexpected rise in the value of the property made its advantageous sale a possibility, and it was thus sold.

APPEAL from a judgment of the Superior Court of Sacramento County. Wm. M. Finch, Judge. Affirmed.

The facts are stated in the opinion of the court.

Devlin & Devlin and Sullivan & Sullivan and Theo. J. Roche for Appellant.

3. Validity of pledge of stock of corporation when not made in the books of the company as against attachments, executions, or subsequent transfers, notes, 67 L. R. A. 656; 20 L. R. A. (N. S.) 996.

Arthur C. Huston and Hughes & Bradford for Respondent.

RICHARDS, J.—This is an appeal from a judgment in the plaintiff's favor in an action wherein the present plaintiff's predecessor in interest sought to impress a trust in his favor as to several tracts of land lying in what is known as the Sutter Basin, in the county of Sutter, state of California. The particular tract of land as to the proceeds of which the judgment was in plaintiff's favor was known and is described in the record herein as the "Wilcoxson Point ranch," consisting of approximately two thousand six hundred acres of land, and was originally owned by one Jackson Wilcoxson, and upon his death, in the early eighties, became the property of the Wilcoxson Estate. The present plaintiff's predecessor in interest, Joseph W. Hughes, was one of the heirs of said estate, his mother having been a sister of Jackson Wilcoxson, but his interest therein derived from this source was comparatively small, being only a one-ninetieth interest therein. Joseph W. Hughes was in those years an attorney at law, in active practice in the city of Sacramento. He was not, however, the attorney for the estate or any of its heirs other than himself, but at times, and as a matter of accommodation, looked after the interests of the heirs in such of the property of the estate as seemed to require attention. Thus it was that in the year 1884 Joseph W. Hughes, for a period of about four months, was upon the Wilcoxson Point ranch looking after the property at the request of certain of the heirs. While there upon that occasion he first met and became well acquainted with Charles F. Silva, the defendant herein, who was then an employee upon the ranch. Some time thereafter said Charles F. Silva came to the said Hughes, who had in the meantime become one of the superior judges of the county of Sacramento, seeking to obtain a contract for the cutting of wood upon the ranch at a dollar a cord stumpage for the wood. Through the offices of Judge Hughes, Silva was able to secure such a contract, and began cutting the wood thereon under this contract. At that time this piece of property was not esteemed of great value, since it was subject to overflow during the major portion of the year, and aside from being occupied largely with timber was mainly usable for pasturage when not under water. During the year which followed the making of the wood-cutting

contract with Silva he cut approximately three thousand eight hundred cords of wood upon the property, and Judge Hughes and he went together to the ranch to measure the wood which had thus been cut before its removal from the premises. While they were there upon this mission Silva, according to the testimony of Judge Hughes, proposed to him that they go in together and buy the property from the heirs of the estate for the price of five dollars per acre, and pay for it out of the wood which they could cut from it, having the land left as their profit. Judge Hughes was agreeable to this proposition and undertook to present the matter to the rest of the heirs. He preferred, however, not to be known in the transaction because of his interest in the estate. At that time one George H. Wilcoxson, one of the heirs, held a general power of attorney from all the rest of the heirs residing outside of California and representing the bulk of the estate. Judge Hughes either wrote to him or saw him personally and laid Silva's proposition before him. It was substantially to the effect that Silva was willing to pay five dollars an acre for the property, or in round figures, thirteen thousand dollars. In response to this proposition George H. Wilcoxson stated he was satisfied the heirs would be willing to sell at that figure, and undertook to lay the matter before them by letter. In a short time he reported to Judge Hughes that he was authorized to sell the property at the price named, but would require a payment of four thousand dollars in cash. When this was reported to Silva he agreed to it, but when the transaction was about ready to be consummated Silva was unable to raise the full amount of the cash payment required, whereupon Judge Hughes borrowed one thousand four hundred dollars from one Adolphe Jean, giving his note therefor. He also at the same time wrote out a declaration of trust for Silva to sign, declaring that he, Silva, held one-half of the said ranch in trust, first, as security for the payment of the amount of Judge Hughes' loan from Jean, and, second, upon its payment to convey one-half of the ranch to Judge Hughes. Having thus arranged for the initial payment upon the purchase price of the ranch, a conveyance was made by all of the Wilcoxson heirs to Silva, Judge Hughes joining with the rest in this conveyance. Some emphasis is sought to be laid by appellant upon the proposition that a fraud of some sort was perpetrated by

Judge Hughes upon the other heirs of the Wilcoxson estate through his concealment from them in the course of this transaction of the fact that he was an interested party with Silva in the purchase of the property. We attach no significance to this suggestion since it nowhere appears, either that Judge Hughes used any advantage which his position as an heir or otherwise gave him to promote the transaction, apparently with Silva, but really in part with himself, to their injury; nor that the price which Silva offered for the property was not the fair and full value thereof according to the then estimation of the value of similarly situated lands. So far as the record discloses, the Wilcoxson heirs, who were the only parties who could have been injuriously affected by any concealment of Judge Hughes' interest in the transaction with Silva, have never complained, and hence it does not lie in the mouth of Mr. Silva, who jointly with Judge Hughes profited by the transaction, to urge that it was attended with any unfairness on the latter's part. The purchase of the Wilcoxson Point ranch having thus been consummated by the deed to Silva, dated March 15, 1899, the duty of paying the balance of the purchase price devolved apparently upon Silva in accordance with the understanding of the parties that the revenues to be derived from wood to be cut upon the land would suffice to pay its purchase price. Silva went into possession of the property and entered into various activities with respect to it, and also to other properties of like location and quality in the same region. He delivered wood to the river boats, and established a woodyard in Sacramento to which wood he had cut upon this and other properties in which he became interested was brought in launches or barges and there sold. Several years went by. The note which Judge Hughes had made to Adolphe Jean became due and was about to outlaw, when, in the year 1904, a new note was executed by Judge Hughes, and a new declaration of trust, in the main similar in terms to the former trust declaration, was executed by Silva. Several years more went by during which the activities of Silva were being extended in various directions and he was making considerable money, being aptly described by Judge Hughes in his deposition as "an energetic and thriving fellow." When the time arrived, in 1908, for the renewal of the Jean note it was renewed by Judge Hughes by a writing to that effect upon it, but the

declaration of trust was not then re-executed by Silva.   In the year 1911 the Jean note was paid by Silva out of funds which, according to the contention and testimony of Judge Hughes, had been derived by him from the proceeds of the property.   During all of these years the relations of the parties continued to be of a friendly and confidential nature. Judge Hughes from time to time rendered legal services of various kinds to Silva in connection with his varied activities, and for which, according to the testimony of the former, he made no charge and received no pay.   On the other hand, Silva from time to time, according to his testimony, loaned Judge Hughes money, furnished him wood, and contributed to his election expenses.   In the year 1912 the Wilcoxson Point ranch, in common with other like properties in that region, became greatly increased in value by reason of reclamation projects undertaken by the federal and state governments, aided by private enterprise, and looking to the drainage, protection, and reclamation of the lands of the Sutter Basin.   As a result of this increase in value Silva was able in the latter year to make a sale of this ranch to the Sutter Basin Company for the sum of $100,128.71.   Not long thereafter Judge Hughes sought an accounting with Silva, but being unable to obtain it began the present suit.

In his complaint herein, filed in December, 1913, Judge Hughes undertook to set forth in a single cause of action his claim that a trust relation had arisen and existed between himself and the defendant Silva in respect to four separate tracts of land, embracing in all 6,263 acres lying in the Sutter Basin, which it was asserted in said complaint had been purchased by the latter pursuant to an understanding and agreement between himself and the defendant that the latter was to hold the legal title thereto but that Hughes was to be the equitable owner of an undivided one-half interest in said lands, and that said defendant had subsequently sold all of said lands for the price of $50 per acre, realizing therefrom the sum of $313,168, or thereabouts, of which said sum the plaintiff was entitled to have an accounting and an equitable division of one-half thereof.   The plaintiff subsequently filed an amended complaint amplifying the averments of his original pleading into five separate causes of action.   The first of these causes of action related to the lands above referred to as the Wilcoxson Point ranch; the other causes of action had

reference to other tracts of land alleged to have been purchased and held by the defendant Silva under a like understanding as that above detailed as to the Wilcoxson Point ranch. The prayer of the plaintiff was for an accounting as to each and all of these properties. The answer of the defendant put in issue all of the material averments of this amended complaint. In the meantime Judge Hughes died, and his widow, as the executrix of his last will and testament, was substituted as the plaintiff herein. Upon the trial of the action the court made its findings sustaining the plaintiff's contention as to the existence of a trust relation as to the Wilcoxson Point ranch, and as the result of an accounting taken as to said property and the proceeds thereof found and decreed that the plaintiff was entitled to recover from the defendant the sum of $45,175.40, as being one-half of the net amount realized by said defendant as the result of his holding, management, and disposition of the Wilcoxson Point ranch. As to the tracts of land referred to in the other counts of plaintiff's amended complaint the findings and judgment of the court were in the defendant's favor, and as to these the plaintiff was held entitled to take nothing.

The defendant has appealed from said judgment in so far as the same is in the plaintiff's favor. A voluminous record has been presented upon said appeal. From the large mass of testimony presented by said record the foregoing statement as to the facts of this case has been prepared by us as embracing a summary which is in harmony with the findings of the court and which supports said findings, and which is in turn sustained by the testimony in the case. [1] In so far, therefore, as the argument of the appellant upon this appeal is directed to his contention that the findings and judgment of the trial court are not supported by the evidence in the case, we hold without further discussion that this contention is without merit in view of the substantial conflict in the testimony of the two original parties as to the facts pertaining to their relation and dealings in respect to the particular tract of land in question during a long series of years.

This brings us to a consideration of the appellant's several contentions as to the law of the case.

The first of these is his contention that there is a variance between the plaintiff's amended complaint and the findings herein in this, that said complaint is predicated upon the aver-

ment of an express trust in the lands in question, whereas
the findings are predicated upon the fact that the parties
engaged in a joint adventure for the purchase of said lands
out of which a trust arose by operation of law. We are un-
able to discover the inconsistency of which the appellant com-
plains. The findings of the court follow in almost their precise
language the averments of the plaintiff's amended complaint.
They then go further and set forth *in haec verba* the two
declarations of trust signed by Silva in connection with the
loan from Adolphe Jean. [2] That an oral understanding
between two parties of the kind in question here may give
rise to an enforceable trust in favor of one of them is abun-
dantly supported by a long line of authorities in this state, of
which the following are a few: *Brison* v. *Brison,* 75 Cal. 525,
[7 Am. St. Rep. 189, 17 Pac. 689] ; *Bradley Co.* v. *Bradley,*
165 Cal. 237, [131 Pac. 750] ; *Younger* v. *Moore,* 155 Cal.
768, [103 Pac. 221] ; *Arnold* v. *Loomis,* 170 Cal. 95, [148 Pac.
518] ; *Lamb* v. *Lamb,* 171 Cal. 577, [153 Pac. 913] ; *Willats*
v. *Bosworth,* 33 Cal. App. 710, [166 Pac. 357] ; and in the
case last cited this court held that such a trust could at the
same time be an express and a resulting trust, and that the
fact that the trustee of such trust had made a written dec-
laration of trust did not change the character of the trust
itself, but merely furnished additional proof of its existence.
[3] The criticisms which the appellant herein aims at the
two written declarations of trust executed by him in con-
nection with the making and renewal of the plaintiff's note to
Adolphe Jean thus lose much of their force; but apart from
this they are not justified by the terms of these writings
taken as a whole, for while it is true that they were made with
express reference to the transaction with Adolphe Jean, they
both expressly declare the existence of a trust entitling the
plaintiff to an equitable interest in the property in question,
and in its proceeds in the event of a sale of such interest in
order to pay said note, while the fact that the appellant and
not the maker of the Jean note did eventually pay the same
in no wise changes the situation, since according to the origi-
nal understanding of the parties the entire purchase price of
the property was to be paid out of itself, and this, according
to the finding of the court, was what was actually and even-
tually done.

[4] The appellant's next contention is that the plaintiff's claim for accounting is barred by laches for the reason that between the years 1909 and 1913 he made no assertion of a claim of interest in the property nor made any demand for an accounting. The evidence abundantly shows, however, that during all these years the relation between the parties was intimate and cordial, consisting of interchanges of courtesies and services, and that down to a short time before the sale of the property its character and value had remained about the same as when it was purchased by them, and hence that there was no reason for a balancing of accounts between them. It was not, in point of fact, until the rather unexpected rise in the values of this and similarly situated property made its advantageous sale a possibility, and until it was actually sold to such advantage, that the occasion for an accounting and settlement between the parties arose; and it was only a short while after this that a demand for an accounting was made and refused and that the present action was instituted. We think the contention that the plaintiff was guilty of laches under these circumstances cannot be sustained.

The other contentions of the appellant herein we find upon a careful examination of the quite elaborate briefs of counsel to be neither covered by the point that they are not reviewable because based upon conflicting evidence, or by the other points already discussed, or else that they are not of themselves of sufficient importance to warrant consideration or to justify a reversal of the case.

The judgment is affirmed.

Waste, P. J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 20, 1919, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 20, 1919.

All the Justices, except Wilbur, J., concurred.