[Civ. No. 3910.   Third Appellate District.—December 30, 1929.]

J. S. LEWIS et al., Respondents, v. ELK HILLS 36 OIL COMPANY (a Corporation) et al., Appellants.

H. L. Carnahan, F. E. Borton, James Petrini and Borton & Petrini for Appellants.

Wiley & Harvey and Harvey & Heard for Respondents.

PULLEN, J., *pro tem.*—Elk Hills 36 Oil Company is a California corporation with an authorized capital of $500,000 divided into 500,000 shares of the par value of $1. Prior to its incorporation Rose L. Burcham was the owner of certain property in Kern County and while so the owner she gave A. W. Mason the right to purchase the property for the sum of $20,000, $10,000 payable in cash, the balance on deferred payments, a deed to be placed in escrow and to be delivered when the total purchase price had been paid.

Upon the execution of the contract Mason induced the defendants Foster and Johnstone to lend financial assistance in raising the initial payment of $10,000, and through their joint efforts the first payment of $10,000 was made and the deed placed in escrow. Apparently un-

able to raise further money among themselves to meet the deferred payment, they decided to organize a corporation for the purpose of raising the balance of $10,000 due upon the property, and also to obtain funds to prospect the land for oil and gas.

Accordingly Mason, Johnstone and Foster, through what is commonly known as dummy directors, caused a corporation to be organized known as Elk Hills 36 Oil Company. These directors during their incumbency passed a resolution wherein it was resolved that the corporation should purchase from L. Dorritt Mason, who was the wife of A. W. Mason, the latter's contract with Rose L. Burcham and in exchange therefor the corporation should issue to her 300,-000 shares of its capital stock, and the residue thereof, to wit, 200,000 should be sold at par. Application was made to the Commissioner of Corporations for permission to so dispose of its stock and approval thereof obtained. Accordingly, 300,000 shares were issued to Mrs. Mason for her transfer of the contracts to the corporation. Thereafter these qualifying directors resigned and the defendants Mason, Johnstone, Peairs, Flickinger and Jameson were elected in their stead. At no time did Mason disclose to Peairs, Johnstone or Flickinger the amount of the contract price for the land and at no time did these defendants pay in the aggregate on account of the purchase price of this land any sum in excess of $10,000, and at the time of the transfer of the contract to the corporation the court found the fair, reasonable value of the land did not exceed $20,000. The court also found that whatever Mrs. Mason did in the matter of transferring her interests in the contract was done at the request and for the benefit of Mason and his copromoters, and it was further found that neither Peairs nor Flickinger paid or invested anything of value toward the development of the corporation and that whatever these two directors should receive for their services in co-operating in the formation of the corporation should be paid them out of whatever share of stock Mason would receive from the corporation for the transfer of his interest in the land to the corporation.

As a result of a sales campaign something over 38,000 shares were sold at par to various individuals among whom were plaintiffs who bring this action upon behalf of the

corporation to have all shares issued to Mrs. Mason in excess of 10,000 canceled. Plaintiffs prevailed in the trial court and defendants appeal.

Respondents urge that the defendants occupied such a position of trust toward the corporation as to forbid the transaction set forth above, and also that defendants induced them by fraudulent representations to become purchasers of the stock, representation complained of being that the corporation owned the land in fee, whereas, in fact, there was due upon the purchase price thereof the sum of $10,000. As to the latter objection the court found the facts to be:

"That upon the appointment and election of the defendants A. W. Mason, M. P. Flickinger, W. A. Johnstone, H. A. Peairs and J. W. Jameson, said company, through and by its said board of directors, commenced a campaign for the sale of the unissued portion of its capital stock through published advertisements and solicitors, and that these plaintiffs purchased shares of the capital stock of the said company at the price of one ($1.00) dollar per share, through the inducement of said advertisements and said solicitors, but that these plaintiffs were not informed through said advertisements or through said solicitors of the amount of stock issued in exchange for said contract to purchase said land, but were misled and deceived by statements of said advertisements and solicitors that said company owned said land in fee, whereas, at the time of the purchase of stock by these plaintiffs, said deed had not been delivered to said L. Dorritt Mason, and no deed of said premises had been made or delivered to said company, and that said balance of said purchase price, to-wit, ten thousand ($10,000) dollars, still remained unpaid, and that each of said plaintiffs in the purchase of his stock in said company relied on said statement that said company owned said land in fee."

This finding falls short of the necessary elements upon which the court could base a conclusion of fraud. As appellants point out and as is set forth in 12 California Jurisprudence, p. 839, under fraud and deceit:

"Findings of merely probative facts bearing upon the question of actual fraud do not show a case of actual fraud as defined by the code; there should be findings of ultimate facts, such as that there was an intent to deceive the plain-

tiff or to induce him to act, that the misrepresentations. were known to be false by the party making them, or were made in a manner not warranted by his information, that such representations were actually false, that they were representations as to facts, and not mere matters of opinion, that the plaintiff believed and relied upon the false statements and was induced solely thereby to give his consent to the contract, and that he was injured."

The court did not in the case at bar find plaintiffs were by the acts induced to make the purchase of stock or that such representations were the sole reason for them buying the stock, also the question of what is meant by ownership in fee is not free from doubt. We do not believe that the findings of the trial court nor the evidence taken at the trial and set forth in the record before us justifies a conclusion that plaintiffs' purchase of stock was induced by fraudulent representations. And this is so whether an attempt is made to recover for the individual purchaser or, as here, to cancel the excessive issuance of stock to defendants. ▆ We believe, however, that the relationship of the defendants toward the corporation at the time of the transfer of the contract to the corporation was such as to justify the complaint of the respondents.

Appellants attempt to find support for their action in the case of *Burbank* v. *Dennis*, 101 Cal. 90 [35 Pac. 444, 446]. In that case Mr. Justice Garoutte, speaking for the court, quotes with approval the case of *Densmore Oil Co.* v. *Densmore*, 64 Pa. St. 43, and holds that the application of the principles of law therein declared furnishes the legal solution of the case then being considered. In that case it is said, in quoting from the case of *Densmore Oil Co.* v. *Densmore, supra:*

" 'There are two principles applicable to all partnerships or associations for a common purpose of trade or business which appear to be well settled on reason and authority. The first is that any man or number of men who are the owners of any kind of property, real or personal, may form a partnership or association with others and sell the property to the association at any price that may be agreed upon between them, *no matter what it may have originally cost,* provided there is no fraudulent misrepresentation made by the vendors to their associates. They are not

bound to disclose the profit which they may realize by the transaction. . . . The second principle is that where persons form such an association, or begin or start the project of one, from that time they do stand in a confidential relation to each other and to all others who may subsequently become members or subscribers, and it is not competent for any of them *to purchase property for the purpose of such a company and then sell it at an advance without a full disclosure of the facts.'* "

This principle of law is not determinative of the issues here as appellants contend for the reason that appellant Mason and his copromoters were not dealing with an independent board of directors, but with mere figureheads placed upon the board as puppets of the promoters and solely for the purpose of effecting the organization and voting the issuance of a block of stock to Mason and thereupon tendering their resignations, which was done. Inasmuch as a corporation can act only through its board of directors the principle of law laid down in the cases cited must presuppose consideration by an independent board of directors, and not the act of a board which is the creature of the promoters.

Appellants Mason and Johnstone were clearly promoters of the Elk Hills 36 Oil Company and as such occupied a peculiar relation toward the corporation which they brought into being as well as toward other persons who, on their invitation and solicitation, became members of the body which they created. They occupy in these respects a fiduciary relation or a relation of trust and confidence and the utmost good faith is required of them in their dealings with the corporation. In those cases where the scheme of organization gives the promoters the power of selecting the directors who are to represent the company in the proposed purchase, they are bound to select competent, trustworthy and independent persons who will act honestly in the interests of the stockholders. (*Dickerman et al.* v. *Northern Trust Co. et al.,* 176 U. S. 181 [44 L. Ed. 423, 20 Sup. Ct Rep. 311, see, also, Rose's U. S. Notes].)

We think it unnecessary to pass upon other points urged by appellants, for it is evident that without an independent board of directors appellants cannot bring themselves within the rule urged by them. And the evidence clearly discloses

and the trial court explicitly finds that defendants did not deal with an independent board of directors, but that in the formation of said corporation said defendants and E. L. Foster used and employed certain named persons to act as incorporators and as members of the first board of directors of said corporation and that all of said persons named did not at any time ever have any interest whatever in said real estate or in said corporation or in any stock thereof, but acted solely and only as dummy directors for the benefit of and at the direction of said defendants and said E. L. Foster.

The judgment is affirmed.

Thompson (R. L.), J., and Plummer, Acting P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 29, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 27, 1930.