## FEDERAL LAND VALUE INS. CO. v. TAYLOR.

### No. 6515.

Circuit Court of Appeals, Ninth Circuit.

Feb. 23, 1932.

Corbet & Selby and Simeon E. Sheffey, all of San Francisco, Cal., for appellant.

Sullivan, Roche, Johnson & Barry, James F. Brennan, and T. G. Negrich, all of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and McCORMICK, District Judge.

WILBUR, Circuit Judge.

Agnes E. Taylor, appellee, brought this action to recover from the Federal Land Value Insurance Company certain mortgages and notes which she alleged were conveyed to it by her in accordance with the terms of an express trust for the purpose of deposit with the treasurers of the states of Nevada and California, as required by the insurance laws of these states, as a condition precedent to the doing of the insurance business. The appellant claims that the transfers were made to it in consideration of stock issued by the corporation to the appellee. This contention constitutes the principal issue in the case. The arrangements with the appellee were made by W. P. Netherton, who organized the appellant corporation, and appellant contends that, notwithstanding that the court may determine that as a matter of fact there was an express trust

352

with reference to the property as between appellee and Netherton, Netherton transferred the property to the corporation on an entirely different arrangement, namely, an exchange of the property which had been assigned to him in the first instance, for stock of the corporation, and that by this breach of trust on the part of Netherton a constructive trust arose in favor of appellee, but that her right to enforce this constructive trust has been barred by the three-year statute of limitations. Appellant further contends that appellee, having intrusted her property to Netherton with the indicia of ownership, is estopped from recovering the property from the corporation to which she transferred it by reason of the subsequent sale by the corporation of its corporate stock to other stockholders who purchased in the faith of the apparent ownership of the property by the corporation, and also that, the property having been deposited with the treasurer of the state of California in pursuance of the original agreement entered into between the appellee and Netherton, the judgment of the trial court requiring the appellant to turn over the property to the appellee is erroneous, for the reason that the property cannot be turned over without prejudicing the rights of policyholders who have contracted for policies of land value insurance upon the faith of such deposit. Before further considering these contentions, a more detailed statement of the facts is necessary.

Agnes E. Taylor is a widow, who at the time of the trial was 74 years of age. Her husband died August 20, 1923, leaving her property of the value of about $200,000. Up to the time of her husband's death, she had transacted no business of any consequence. She had lived with her husband for forty years upon a ranch near Byron, Contra Costa county, Cal. She had known W. P. Netherton from the time he was 16 years of age. She and her husband had financed his education. He became an attorney, and thereafter acted for the husband, and, after his death, for the widow. He probated the estate of the husband and continued to act as Mrs. Taylor's attorney until November 20, 1929, about thirty days before this suit was instituted. During all this time Mrs. Taylor had implicit confidence in W. P. Netherton. She neither had nor sought any independent advice in any of the transactions involved in this matter until shortly before the bringing of this suit. Her only son lived in New York; her brother-in-law, considerably older than herself, was mortgagor in two of the mortgages which were transferred by ap-

pellee to Netherton and are part of the subject-matter of this suit. This brother-in-law was not consulted by appellee. Mrs. Taylor's testimony is undisputed, except in so far as written documents signed by her and the records of the appellant corporation tend to contradict her testimony, although such testimony does not in fact contradict anything testified to by Mrs. Taylor, for the reason that she disclaimed all knowledge of the contents of the various documents signed by her, although freely admitting that she did in fact make the signatures appended thereto; her statement being that Netherton told her that it was all right for her to sign the documents, that they would not affect her right to the return of her securities and to the receipt of the income derived therefrom during the possession of these securities by him for and on behalf of the corporation, in accordance with his original statement and agreement made by him at the time he secured her consent to the use of the mortgages and property already in his possession as her attorney, for the purpose of utilizing the same as security for the proposed corporation which was subsequently organized, and is the appellant.

With reference to the claim by the appellant that the testimony of Mrs. Taylor is wholly incredible, it is sufficient to say that there is no inherent improbability in her story, if we believe, as she testified, that she had such implicit confidence in Netherton that she accepted his statements without even investigating the contents of the documents which she signed. In short, he said it was all right and she believed him. The transactions, considered as a whole, seem to bear out this contention, as will be disclosed by further amplification of the evidence, which shows that at all times Mrs. Taylor continued to receive the interest on her notes and mortgages collected by Netherton as theretofore; that, in the correspondence concerning overdue interest upon the mortgages theretofore transferred by Mrs. Taylor to Netherton and by him to the appellant, the obligations were referred to by Netherton, who was president of the appellant, as still belonging to Mrs. Taylor, notwithstanding the assignment. After the payment of over $7,000 in interest to Mrs. Taylor, as it accrued upon the notes and mortgages assigned by her to Netherton at the time it was collected by Netherton, Mrs. Taylor was induced to sign a note to the appellant corporation for the exact amount of the interest which had theretofore been collected by Netherton for her. She testifies she did not know she was signing a

note; that she had accepted the interest at all times as hers. There is no basis whatever for this situation other than the explanation given by the plaintiff that, notwithstanding the assignment of the notes and mortgages by her to Netherton, they were understood to be hers subject to the right of possession by the treasurers of the states of California and Nevada as security required by law from the appellant corporation. There is no proof and no claim that she ever received any money from the corporation in any other manner nor for any other reason than because of the receipt by Netherton of interest on the obligation which had been transferred by her to the corporation. Netherton was made a defendant in the case, and defaulted, and at the trial he did not testify, presumably because he was too ill to do so. Mrs. Taylor testified that she never made any contract or arrangement with Netherton in regard to the mortgages and notes she turned over other than the agreement that they would be returned to her upon demand, and that she would be paid the interest thereon as it accrued and that in the meantime these securities should be deposited with the state treasurer as required by law to enable the appellant corporation to transact insurance business. She testified that she did not agree to accept stock in the corporation, that she was not asked to do so, had no knowledge of the issuance of stock, never had possession of the certificates, and, although she signed receipts for the certificates, she did not receive them and did not know that the instrument she had signed was a receipt for certificates of stock, because she made no effort to ascertain the fact and relied implicitly upon the statement of Netherton that signing these instruments would not change the situation nor affect her interest in any way.

█ The trial court was amply justified in concluding that Netherton was the trustee of an express trust by which he received and held the mortgages of the appellee in trust for her, to collect the interest for her and deposit the mortgages with the treasurers of the states of Nevada and California to be returned upon demand. She received no consideration for the transfer of her mortgages and notes and asked none.

We will next address ourselves to the question of the relationship of the appellant corporation to the appellee in so far as it affects the right to the property concerned in this litigation.

█ Mrs. Taylor transferred three mortgages aggregating $42,533.66 to W. P. Netherton on December 2, 1925, to be used as security for a corporation thereafter to be formed by Mr. Netherton, all as hereinbefore stated. On April 9, 1926, Mr. Netherton went to Reno, Nev., organized the Federal Land Value Insurance Company, of which he was president. Dummy directors were installed to do his bidding, by-laws were adopted in accordance with his desires, and in accordance with his plan 1,000 shares of stock were issued to him ostensibly for a release of his interest in and to the securities intrusted to him by the appellee, in which he had in fact no beneficial interest whatever. At the time of this purported transaction, Netherton was not only in entire command of the situation as president of the corporation, and as its sole prospective stockholder, but also because of the fact that the dummy directors were selected by him for the purpose of formally acting upon and recording the purported transaction. He knew at that time that he had no interest in the mortgages intrusted to him, he knew that there was no arrangement with the beneficial owner thereof for the exchange of these mortgages for stock, and his knowledge was the knowledge of the corporation. This cannot be denied. The corporation was his alter ego. That the corporation thereby became the trustee of the property for Mrs. Taylor is not and cannot be denied if the premise is accepted that Netherton received the property under the express trust hereinabove set forth. The contention, however, is that Netherton committed a wrong in purporting to transfer these mortgages to the corporation in exchange for stock, and therefore the trust which followed the property into the hands of the appellant was a constructive trust rather than an express trust in appellee's favor, consequently, that the right of action to recover the property was barred three years after the transfer by Netherton to the appellant corporation. Appellee's contention, however, is that the action of the corporation in accepting these mortgages from Netherton for deposit in accordance with his agreement with Mrs. Taylor, made on its behalf, with full knowledge of the agreement in pursuance of which they were obtained by Netherton, was an acceptance of the obligations as well as the benefits of the agreement entered into between Netherton and appellee. We see no escape from this proposition. 6 Cal. Jur. 705, § 112; Jones v. Allert, 161 Cal. 234, 118 P. 794; Scadden Flat Gold-Min. Co., 121 Cal. 33, 53 P. 440; Thompson on Corporations, p. 137, §§ 114, 115, 116, 118. The fact that the corpora-

tion, with full knowledge of the duties and obligations of Netherton and of the fact that the property had been secured by an express agreement as to its use, bound the corporation to carry out the agreement of Netherton in consideration of the benefit it received as result of that agreement. It is to be borne in mind, in considering the relationship of the corporation to the appellee, the beneficial owner of the property which had been intrusted to Netherton, that the agreement with Mrs. Taylor, the appellee, was not made by Netherton on his own behalf, but was expressly made by him on behalf of the appellant corporation which he was to form. The corporation, upon its organization, became entitled to the rights which the promoter had secured for it and was consequently subject to the obligations of that agreement, if and when it accepted the agreement of the promoter as one made on its behalf and beneficial to it. In short, the agreement of the promoter became the agreement of the corporation, when it knowingly accepted the benefits thereof. If, having secured this property on behalf of the corporation, the promoter sought to secure a secret profit to himself because of the arrangement, it would be fraud by him upon the corporation. No doubt the corporation could repudiate the ostensible contract with Netherton by which Netherton secured 1,000 shares of stock in exchange for rights which already belonged in equity to the corporation as secret profits, if they were in fact secret. Thompson on Corporations (2 Ed.), p. 145, § 119. The fraud then, if any there was in the transfer of this property from Netherton to the corporation, was in the exaction by Netherton of a consideration to himself for the transfer to which the corporation was already entitled by reason of the arrangement made with Mrs. Taylor. The corporation has secured the benefit of that arrangement, and by the most elementary rule of equitable jurisprudence it must bear the burden of the transaction. It is argued by appellant that Netherton was a wrongdoer in the transaction with the corporation, and that therefore his knowledge of the trust agreement cannot be imputed to the corporation. Hence it is argued that there was, therefore, no acceptance of a trust relationship by the corporation. The authorities cited by the appellant on the question of imputed knowledge more fully indicate its position. 4 Fletcher on Corporations, § 2185, p. 3390; Gardiner v. Equitable Office Bldg. (C. C. A.) 273 F. 441; 17 A. L. R. 431; Danglade v. Mexico-Joplin Land Co. (Mo. App.) 190 S.

W. 35; Mooney v. O. P. Mooney Co., 71 Wash. 258, 128 P. 225; American Surety Co. v. Pauly, 170 U. S. 133, 156, 18 S. Ct. 552, 42 L. Ed. 977; Fidelity & Deposit Co. v. Courtney, 186 U. S. 342, 22 S. Ct. 833, 46 L. Ed. 1193; American Nat. Bank v. Miller, 229 U. S. 517, 33 S. Ct. 883, 57 L. Ed. 1310. We need not discuss this rule by which a corporation is sometimes absolved from knowledge possessed by its officers and agents, for in the case at bar Netherton was not only the sole promoter, but he became the sole stockholder aside from qualifying shares which were assigned by him to the directors who acted for him in the inauguration of the corporation's business. He remained in sole control of its business for three years. There was no one to whom he could disclose his knowledge, and no one to defraud by his silence, until later on stock was sold to the public. Upon what basis can the appellant retain the mortgages secured for it by Netherton, and at the same time repudiate the promises made by him as a foundation for their use? If we assume that the corporation had no knowledge of the trust agreement between Netherton and the appellee, it cannot even now repudiate the transaction by which it was secured and retain the property so secured. See Seacoast Railroad Co. v. Wood, 65 N. J. Eq. 530, 56 A. 337. The repudiation of the obligation requires the return of the property. This much seems to be conceded, but the contention is that the transfer from Netherton to the corporation transformed an express trust into a constructive trust, consequently, that the three-year period of limitations has expired, notwithstanding the fact that Mrs. Taylor transferred the mortgages to Netherton for the express purpose of having them used by the corporation for deposit, as was done. The trust, whether express or constructive, was in its nature a continuing one, and the California statute of limitations does not start to run against the beneficiary until the repudiation of the trust. Brison v. Brison, 75 Cal. 525, 17 P. 689, 7 Am. St. Rep. 189; Cooney v. Glynn, 157 Cal. 583, 108 P. 506; Smith v. Lombard, 201 Cal. 518, 258 P. 55; 25 Cal. Jur. 271; Lamb v. Lamb, 171 Cal. 577, 153 P. 913; Arnold v. Loomis, 170 Cal. 95, 148 P. 518. The appellant was substituted as trustee for Netherton. We hold that the trust here involved is an express trust, and that the statute of limitations did not begin to run until the repudiation of the trust.

The second cause of action of the appellee concerns a mortgage for $37,000 executed

by her upon her home property in favor of appellant as mortgagee, dated August 21, 1926. This mortgage, appellee testified, was signed by her at the instance of Netherton on behalf of the appellant for deposit with the treasurer of the state of California in accordance with the provisions of section 453h of the Civil Code of California. It was stated to her by Netherton at that time that the corporation needed more securities and that her signatures to the documents she then signed were necessary in order to comply with the requirements of the state treasurer. He did not tell her what the documents were, but he did tell her that the signing of the documents would not harm her in any way or affect her interest; no suggestion was made to her that she was to receive any consideration for the transaction; she did not agree to receive in exchange therefor $32,000 worth of bonds of the California Rio Grande Land & Stock Company; nor did she agree to receive therefor a promissory note and mortgage of Hans Hanson and Ella B. Hanson in the sum of $5,000; nor did she agree to receive 295 shares of the capital stock of the corporation, although the stock, bonds, and note were ostensibly transferred to her and retained by Netherton in consideration of her mortgage for the sum of $37,000.

The findings of the trial court in that regard, we think, are a complete answer to appellant's contention. We may abbreviate these findings as follows:

That Netherton, at the time the note and mortgage for $37,000 were executed to plaintiff was president of the appellant company and vested with all the powers of the board of directors thereof and had complete charge and control of all the business and affairs of the corporation; that Netherton acted on behalf of the appellant in such transaction and agreed with plaintiff "that if she would permit said corporation to use said note and mortgage for $37,000 as a part of the statutory deposit required of it as a corporation engaged in the land value insurance business, said corporation would use said note and mortgage only for that purpose and return said note and mortgage to said plaintiff at any time she wanted them and that said corporation would be responsible to her for the return of said note and mortgage. Said plaintiff consented that said note and mortgage might be so used by Federal Land Value Insurance Company, and said note and mortgage were actually used by it as a part of its statutory deposit only because of said agreement made by said W. P. Netherton on

its behalf that said plaintiff could have said note and mortgage back at any time she wanted them;" that the appellant did not transfer to plaintiff 295 shares of its capital stock or the aforesaid bonds for $32,000 or note for $5,000; that plaintiff is not a party to that transaction and had no knowledge or notice of it; that no stock in the corporation was issued to the plaintiff nor received by her; that no such stock has been in her possession. Under these findings, which are supported by the evidence, the corporation was bound by the express trust agreed to by its president on its behalf by reason of which it secured the mortgage from the appellee without any consideration other than the agreement to restore it upon demand. Mrs. Taylor testified with reference to the $37,000 mortgage as follows:

"W. P. Netherton said he has to have more securities for the company in Nevada and he talked along that way and that in order to do that they had to have more money. I told him I would be glad to help him out in any way if it was never to leave my hands. He said I would be absolutely protected and asked me to sign. Never told me what it was. He offered me a writing to sign. I did not have any independent advice concerning the contents of what I was signing. No one was present except Mr. Netherton and myself. * * *

"I did not learn until about November 1, 1929, what I had signed was a mortgage to the company on my home place. I received no consideration for the signing of the note and mortgage. I never paid any interest thereon. I did not appear in Santa Cruz before the notary who purported to take my acknowledgment. The notary who acknowledged the mortgage was Mr. Netherton's secretary. I was not in the County of Santa Cruz during the year 1926. * * *

"When Mr. Netherton prevailed upon me to make the $37,000 mortgage on my home, he did not say to me that I was mortgaging my home place. Theretofore the ranch had been clear of encumbrance for years. W. P. Netherton prepared the papers, brought them with him to my home where I signed the $37,000 mortgage in the upstairs room. No demand was ever made upon me for the payment of interest. * * *

"I had implicit confidence in W. P. Netherton because he was an old friend and had been educated by myself and husband and every time I signed anything I would ask, 'Is this perfectly safe?' and W. P. Netherton would assure me that it was all right.

"There was never any agreement that I should take stock in defendant Federal Land Value Insurance Company. There was never any understanding or mention that I was to receive anything in consideration for making the assignments and I received nothing. W. P. Netherton said I would get them back any time. They were never to leave my hands. * * *

"Mr. Netherton wanted the $37,000 mortgage for the company. I asked him when he took the mortgages if I would be perfectly secured and he said, 'Yes,' and that I could get them back whenever I wanted them."

She testified she made no agreement to accept stock, either at the time of the execution of the $37,000 mortgage or in 1925 when she made the original assignments. She testified that in 1925 when Mr. Netherton discussed the matter of the formation of a new company he asked her if she wanted to take stock in the company.

"I said, 'No, I wouldn't mind two or three thousand dollars to help you out.' I said, 'You know, Mr. Taylor wasn't a man to go into stock,' and I said I didn't have to, and he said, 'No, Agnes, you don't,' and that is as much as I know about stocks. * * * There is no doubt that it is my signature on all of those documents. I do not remember signing them. Mr. Netherton never asked me to read them, and I took it for granted he was an honest man. He never refused to allow me to read them but never asked me to. I have no difficulty in reading. * * *

"The first time I knew of the $37,000 mortgage was the day before Christmas. [Evidently the day this action was brought—December 24, 1929] Before that time [November, 1929] I learned that I had executed assignments of the Heins mortgage and the two A. V. Taylor mortgages. I knew that Mr. Netherton had put in escrow the A. V. Taylor mortgages and the Heins mortgage, but didn't know he had the Heins mortgage. That it was in escrow with the company. He had all the papers in his possession. Those papers came to him when he was handling my husband's estate. He kept all the papers. I haven't a paper today."

The gist of her testimony is that, although she signed the note and mortgage at the time it was dated and knew that she had signed some document to give more security to the corporation, she did not know that it was a mortgage, and that she had never been asked for interest on the mortgage, and only discovered on December 24, 1929, that she had executed such a mortgage. The reason she gave for this situation may be stated in her own language:

"I had implicit confidence in Mr. Netherton. I had known him since he was a school boy. [He was 65 years of age at the time of the trial.] He came to me and took just what he wanted. I permitted him to do that. I realized I was placing all my affairs in his hands but thought he would take care of me. He kept saying all the time that, 'everything would be fine. That everything would be all right.' * * *

"I didn't know anyone in whom I could confide and whom I thought was more honest than Mr. Netherton."

It is clear then that the arrangement made by Mr. Netherton on behalf of the corporation he represented was that the mortgage given by her to the corporation should be used by it for deposit as security with the proper public official, in this case the treasurer of the state of California, and that he agreed on behalf of the corporation that "this security" should be returned to her upon demand. Apparently she believed that the security was to remain in the custody of Mr. Netherton, who had had the custody of all her papers for several years, but it is conceded that the agreement she made was, as found by the trial court, one for the deposit of this mortgage with the state treasurer.

It follows that, as between the appellant and the appellee, the mortgage should be canceled.

Appellant pleads estoppel. This claim is predicated upon the rights of stockholders and policyholders accruing after the transaction in question and in the belief that the transaction between appellee and appellant was correctly set forth upon the records of the corporation and of the state treasurers. It is sufficient reply to this contention to say that Mrs. Taylor did not in any way participate in transactions by which the several stockholders and policyholders became such, nor was she aware of the fact that the agreement under which she had surrendered her property was being or had been violated by Netherton or by the appellant. It does not lie in the mouth of the appellant to assert that its obligations to Mrs. Taylor, the appellee, voluntarily assumed by it, can be repudiated now because it had subsequently misrepresented the facts to those to whom it had sold stock or to those to whom it issued

policies of insurance. These policyholders and stockholders may have been defrauded by the agents of the corporation who dealt with them, but the appellee is not responsible for their fraud.

It is true, as appellant carefully points out, that, where a person intrusts his property to another with all the indicia of ownership, and that person sells the property to an innocent third person, as between the two innocent persons claiming to own the property the purchaser sometimes will be held the owner, and the loss due to the fraud of the owner's agent will fall upon the owner. Appellant, on this point, cites the Civil Code of California, § 1142; Fowles v. National Bank, 167 Cal. 654, 140 P. 271; Anglo-California Trust Co. v. Acceptance Corporation, 70 Cal. App. 45, 232 P. 489; Rapp v. Fred W. Hauger Co., 77 Cal. App. 421, 246 P. 1067; Carpy v. Dowdell, 115 Cal. 687, 47 P. 695; Gardner v. Beacon Trust Co., 190 Mass. 27, 76 N. E. 455, 2 L. R. A. (N. S.) 767, 112 Am. St. Rep. 303, 5 Ann. Cas. 582; Stoner v. Security Trust Co., 47 Cal. App. 222, 190 P. 500; In re Rawlins Mercantile Co. (D. C.) 251 F. 164, 170; Kohn v. Sacramento Electric Gas & Ry. Co., 168 Cal. 11, 141 P. 626; National Safe Deposit Co. v. Hibbs, 229 U. S. 396, 33 S. Ct. 818, 57 L. Ed. 1241.

These cases have no application to the transactions between Mrs. Taylor and Netherton and the subsequent transfer to the corporation, for he was the agent of the corporation and not of the appellees in these matters.

The claim here is that the appellee is estopped from enforcing the trust, because the corporation subsequently issued and sold stock for $200,000; that this stock was issued upon the faith of its books, which, under the direction of its president, had falsely set forth the transaction with Mrs. Taylor. Equity does not permit a wrongdoer to set up its own wrong to estop an innocent person. Mrs. Taylor had no knowledge or notice of the intended fraud, and did not participate in it. If these stockholders were defrauded by misrepresentations of the corporation, they have a remedy against the corporation and its promoter. See Lewis v. Elk Hills, 103 Cal. App. 14, 283 P. 879. The corporation cannot interpose the defense of estoppel on their behalf. See Wilson Coal Co. v. U. S. (C. C. A.) 188 F. 545;

Linn & Lane Timber Co. v. U. S., 236 U. S. 574, 35 S. Ct. 440, 59 L. Ed. 725.

Another point involved in the case is as to the right of the state treasurer to retain the securities on deposit with him by the appellant notwithstanding the fact that, as between the appellee and the appellant, the appellee would otherwise be entitled to the possession thereof. The decree required the appellant to turn over the notes and mortgages involved in this suit which are now on deposit with the treasurer of the state of California. It is not contended by the appellee in this court that as against the state treasurer she is entitled to the custody of these securities. They were transferred to the appellant for the express purpose of making such a deposit, and appellee does not claim the right to have the deposits withdrawn except through the medium of the appellant corporation. The state treasurer was not made a party hereto, and, by reason of the law under which he holds the securities, he is a trustee thereof for the policyholders. In his absence the decree herein would not be binding upon him and if he were a party to the action a decree against him would be improper. Under the law in California, after the deposit of securities by an insurance company such as the appellant, such securities so deposited may at any time be withdrawn upon the substitution of other securities of equal value. In view of appellant's right to recover these securities and to turn them over to the appellee in accordance with the decree appellee supports the terms of the decree of the trial court upon the ground that appellant should be compelled to make such substitution of securities if it is able to do so. To this we agree. The appellant should at once transfer such property to appellee subject to the rights of the state treasurers. However, to avoid misunderstanding, the decree will be modified by the insertion of the phrase, "All without prejudice to the rights of the state treasurer of the state of California to hold said property to secure policyholders, in accordance with the law of California, until securities satisfactory to him are substituted in lieu thereof by the Federal Land Value Insurance Company, or on its behalf."

No other assignment of error requires discussion.

So modified, the decree is affirmed; appellee to have her costs on appeal.