[Civ. No. 3498. Second Appellate District, Division One.—March 1, 1921.]

## ISABEL H. ROOT, Appellant, v. BELLE H. KUHN, Respondent.

[1] TRUSTS—PAYMENT OF PURCHASE PRICE OF REAL PROPERTY—RESULTANT TRUST—PRESUMPTION.—Under section 853 of the Civil Code, where a person, out of her own funds, pays the entire purchase price of certain lots and, by a simple grant deed, causes title to the same to be conveyed to another, the property at the instant the title passes is presumed to have been impressed with a trust in her favor.

[2] ID. — REBUTTAL OF PRESUMPTION — PAROL EVIDENCE. — While such presumption of a resulting trust is a rebuttable one, in an action by the person who paid for the lots to compel a conveyance thereof to her, it is error to permit the defendant to resist that trust by proof of an express trust based upon a verbal understanding, contrary to the provisions of section 852 of the Civil Code.

[3] ID.—ACTION TO ENFORCE RESULTING TRUST—EXPRESS TRUST IN DEFENDANT'S FAVOR—INSUFFICIENCY OF EVIDENCE.—In this action to compel a conveyance of certain lots from defendant to plaintiff upon the theory that such lots were the subject of a resulting trust in favor of plaintiff, neither the parol evidence introduced by defendant, conceding its competency and admissibility for the purpose, nor the letters relied upon, was sufficient to estab-

lish the express trust pleaded by defendant in her answer, which allegations the court found to be true.

[4] ID.—ESTABLISHMENT OF TRUST — SUFFICIENCY OF DOCUMENTS.— While no particular formality is required in the creation of a trust in real property, nor need all the conditions of the trust be expressed in a single paper, where documents or letters are relied on to establish a trust they must clearly show not only the existence of the trust, but the extent to which the property is held in trust.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Reversed.

The facts are stated in the opinion of the court.

Porter & Sutton and Hugh J. McClearn for Appellant.

Haas & Dunnigan for Respondent.

SHAW, J.—Upon the theory that certain lots of real estate, title to which had been vested in defendant, were the subject of a resulting trust in favor of plaintiff, she brought this action to compel a conveyance thereof.

Judgment went for defendant, from which plaintiff has appealed.

Section 853 of the Civil Code provides that "When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

[1] It is conceded that on May 14, 1909, plaintiff, out of her own funds, paid the entire purchase price of the lots and, by a simple grant deed, caused title to the same to be conveyed to defendant; and hence, under the provisions of the statute quoted, the property at the instant the title passed is presumed to have been impressed with a trust in favor of plaintiff, who, in the absence of other showing, would be entitled to a conveyance thereof in accordance with the prayer of the complaint. (*Hellman* v. *Messmer*, 75 Cal. 166, [16 Pac. 766]; 39 Cyc. 106.) [2] The presumption, however, is a disputable one, and to overcome its effect, defendant in her answer alleged facts which, if properly established, would have created an

express trust for the use and benefit of both parties. As alleged, these facts in substance are, that it was at the time of the conveyance *verbally understood* between the parties that during the life of plaintiff the defendant was to hold the property for the use and benefit of plaintiff and defendant, so that either, if desired, could reside thereon, and that upon the death of plaintiff the title should vest absolute in defendant, if then living; otherwise, in her heirs. That it was further *verbally understood* that while plaintiff was to provide all moneys required for the care of the property and payment of taxes, defendant was to look after and care for the same without charge for the services rendered, and that defendant did, in accordance with said understanding, take charge of the property, and did, without making any charge therefor and out of moneys obtained from the rental thereof, or supplied by plaintiff, care for the property and pay taxes and assessments levied thereon. "That from time to time subsequent to the said fourteenth day of May, 1909, the said plaintiff, both verbally and in writing, did reiterate the said agreement and did reiterate her statement that the said premises should be employed as a home for plaintiff and this defendant at such times when either plaintiff or this defendant desired to so occupy the same, either jointly or severally, and that the same should be and constitute the property of this defendant in fee simple absolute upon the demise of said plaintiff, . . . and continued to so do up to the filing of the complaint herein. That said plaintiff did likewise from time to time, both verbally and in writing, give instructions to this defendant to do with said premises as she thought best and to incur such charges and expenses against the same as she thought necessary or fit. That the said plaintiff did at all times state that her purpose and object in acquiring the said premises and in causing the title thereto to be vested in this defendant was for the benefit and protection of this defendant, saving and reserving to said plaintiff only the use of said premises during her natural life at such times as she intended to use the same."

The judgment rests upon findings made in accordance with the allegations of the answer, in support of which defendant, over plaintiff's objection, was permitted to give

oral testimony. In our opinion, the court erred in such ruling. The resulting trust in favor of plaintiff arose from the facts concededly established, in resistance of which defendant, by her answer, alleged an express trust based upon a "verbal understanding" and contrary to the provisions of section 852 of the Civil Code, which provides: "No trust in relation to real property is valid unless created or declared: 1. By a written instrument, subscribed by the trustee, or by his agent thereto authorized by writing; 2. By the instrument under which the trustee claims the estate affected; or, 3. By operation of law." She sought by parol testimony to establish the existence of the same. Under the provisions of the law just quoted, the operation of the resulting trust could not be abridged or otherwise affected by parol testimony which tended to show the existence of an express trust the terms of which are wholly inconsistent with the former and from which, if the alleged facts were properly established, it must follow that the property, subject to a restricted right of use during her lifetime, was intended to be a gift made by plaintiff to a stranger. (*Plass* v. *Plass,* 122 Cal. 3, [54 Pac. 372].) In *Burling* v. *Newlands,* 112 Cal. 496, [44 Pac. 816], it is said: "The fact that a trust of lands is created must not only be manifested and proved by a writing properly executed, but it must also be manifested and proved by such a writing what the trust is." (Pomeroy's Equity Jurisprudence, sec. 1009.)

[3] We may say, however, that even if parol evidence was admissible, the testimony adduced falls far short of establishing the allegations of the answer. It appears therefrom that plaintiff and defendant were old friends, the former residing in Duluth, Minnesota, and the latter residing in Los Angeles County, where she owned some lots in Sierra Madre, adjoining which were located the lots in question. The only testimony touching the subject of the purchase, as disclosed by the record, is that of defendant, who, in response to the question as to what was said between her and plaintiff with reference to the purchase of the lots, stated: "I don't remember any more than we both loved it there, and she wanted to come out here and live after she finished her business in the east; and I wanted she should come and live with us—I have

always cared very much for her." And to the question: "What was said, if anything, between you and Mrs. Root relative to the occupancy of the property, if she should buy it?" she answered, "I don't remember now." Further questions and answers were as follows: "Q. Was anything said about who was to live on it? A. Well, we were—she was going to build a cottage and thought we might live together on it. We were always speaking of the beauties of the place, and how happy we would be when we had something we could keep. Q. Do you know any reason, other than you have stated, why the title was put in your name when the purchase was made? A. No. Nothing further was said other than that we were to live on the place together. Q. What I want to get at there is, how did the subject of her buying these lots first arise— who suggested it? How did it first come up? A. She liked them, and she wanted to get them so as to live there." It further appears that the parties were not related, and that plaintiff was under no obligations to defendant in a pecuniary way, and that during all of the time subsequent to the purchase of the property defendant had paid all assessments, taxes, and expenditures in the care and upkeep of the property. It is apparent, we think, from this testimony that even though it were conceded to be competent for the purpose, it is wholly insufficient to establish the allegations of the answer which the court found to be true.

[4] In addition to such parol testimony, there were received in evidence, over plaintiff's objection, several letters written by plaintiff to defendant, the first of which was under date of April 17, 1910, and the last under date of August 13, 1912. Conceding the insufficiency of the parol testimony to impress the land with a trust in favor of defendant, her counsel insists that the letters constitute written evidence thereof. While it is true that no particular formality is required in the creation of a trust, nor need all the conditions of the trust be expressed in a single paper (*Tenney* v. *Simpson,* 37 Kan. 579, [15 Pac. 512]), nevertheless, the documents must clearly show not only the existence of the trust, but also the extent to which the property is held in trust. As said by Mr. Pomeroy in his work on Equity Jurisprudence, section 1009: "The declaration of trust, whether written or oral, must be rea-

sonably certain in its material terms; and this requisite of certainty includes the subject matter of property embraced within the trust, the beneficiaries or persons in whose behalf it is created, the nature and quantity of interests which they are to have, and the manner in which the trust is to be performed. If the language is so vague, general, or equivocal that any of these necessary elements of the trust is left ·in real uncertainty, then the trust must fail." (*Wittfield* v. *Forster*, 124 Cal. 419, [57 Pac. 219].) Measured by the rule thus announced, the letters, written long after the conveyance of the property to defendant, and at which time the resulting trust arose, are wholly insufficient to support the finding of the court that the allegations of the answer are true. They were apparently written in reply to letters from defendant, in the absence of which their meaning is not clear. However, there is nothing in the letters to either indicate that an express trust was created, or, if created, that its purposes · were within the provisions of section 857 of the Civil Code, which authorizes the creation of trusts for the purposes therein designated. All that can be gleaned from the letters is that plaintiff, on account of her friendship for defendant, who owned lots adjoining those in question, was desirous of handling the property in a manner which would not be detrimental to the latter, and that while the title was vested in defendant, plaintiff nevertheless recognized her obligation to pay all charges against the property and did so pay them. Referring to a street improvement bond existing against the property, plaintiff, in a letter dated December 5, 1910, said: "If anything should happen to me you would have that added to the load you are carrying." In a letter following, she said: "Don't think I ever worried over the lots. I bought them more because you wanted them than anything else, and when I do build will still keep the property in your name, so when anything happens to me there will be no question as to who owns it." Another contains the statement: "I want you to handle the lots in any way that would help you." And under date of March 18, 1912, she, in reply to a letter from defendant wherein she refers to a prospective sale of Los Angeles property owned by the latter, asks: "If you sell, will that clean up all

there is against the Los Angeles place?" And later, on August 13, 1912, she, in writing to defendant, said: "If you can sell the lots instead [of your own property], do so, and I will let you have the money." It is apparent from these letters that they were written in response to letters from defendant wherein she had disclosed her financial troubles to plaintiff, and, on account of her friendship, the latter in her replies manifested a desire to encourage and help her through her difficulties, even to the extent, as she states, of selling the lots and letting defendant have the proceeds. Whether considered singly or all together, the casual statements in relation to the property are wholly insufficient to support the findings to the effect that an express trust in the property was created for the benefit of defendant.

The judgment is reversed.

Conrey, P. J., and James, J., concurred.