[Civ. No. 14364. First Dist., Div. Two. June 25, 1951.]

JACK MULLI et al., Respondents, v. MARION MULLI, Appellant.

Erskine, Pillsbury & Tulley and Leonard A. Worthington for Appellant.

Hancock, Elkington, Rothert & Low for Respondents.

NOURSE, P. J.—Defendant Marion Mulli appeals on the judgment roll only from that part of a judgment which decrees that plaintiff Viva Armstrong Mulli and the Estate of Jack Mulli, also known as John Herman Jansen, Deceased, are the owners of an undivided one-half interest in the real property located at 121 San Pablo Avenue, San Francisco, California and orders said defendant to convey forthwith to the said plaintiffs an undivided one-half interest in said real property. The only question presented on this appeal is whether or not the findings are sufficient as a matter of law to support said judgment.

The findings relating to this part of the case are in substance as follows: (the parties being hereinafter indicated by their first names only) Jack, who was a brother of Marion, died on August 29, 1948 and Viva, his widow, as executrix of his estate, was substituted in his place in this action. In December, 1936, Marion, who was then divorced, had record title subject to a mortgage to the San Pablo Avenue property. In that month Viva and Marion entered into an oral agreement by which Viva and Jack agreed to pay off the indebtedness in a sum in excess of $7,000 secured by said mortgage, in monthly instalments. Marion agreed to grant to Viva and Jack an undivided one-half interest in said property, to hold said undivided one-half interest for the benefit of Viva

and Jack, to allow Viva and Jack to live upon the premises as long as they, or either of them so desired, to convey said one-half interest to them upon demand and should the property be sold prior to the actual conveyance of the title of said undivided one-half interest to Viva and Jack that Marion would pay to Viva and Jack one half of the proceeds from such sale. In reliance on said agreement and the promises of Marion made therein Viva and Jack paid off said indebtedness and mortgage and expended thereupon the sum of $8,-986.60; payments to the creditor were made from December, 1936, to October 1947; in November, 1946, the final payment was made, the amount of $818.75 being advanced by Marion; from December, 1946, through October, 1947, Viva and Jack reimbursed Marion for said $818.75 by making payments to her in the sum of $75 per month. The oral agreement has been fully performed in every respect with the exception of the actual conveyance of the record title to an undivided half interest in said property to Viva and Jack.

In December, 1936, Viva and Marion orally agreed further that Viva would live with Marion upon said property and that so long as they lived together thereupon Marion would deposit any income which she received in a joint bank account established by them and that Viva would deposit in said bank account such additional funds as were required for the payment of the house expenses, personal expenses and living expenses of both Marion and Viva, and that said payments by Viva would be additional consideration for the agreement of Marion to transfer an undivided half interest in the property to Viva and her husband. Viva lived upon the premises with Marion from December, 1936, until December, 1947. All the personal expenses, household expenses and living expenses of both parties for the period were paid for from the joint bank account. From such payments the sum of $21,947.80 was expended for the benefit of Marion alone. In December, 1947, Marion refused to allow Jack to live on said property with his wife Viva, whereupon Viva moved from said premises. She had fully performed all the conditions of her agreement with Marion.

In the spring of 1937, when the property needed repairs and permanent improvements, Viva and Marion agreed further that certain repairs, permanent improvements and additions to the property would be made, all of which would be paid for by Viva, that Viva would also pay the taxes, insurance and St. Francis Wood assessment for as long as the

parties lived together on the property and that said payment by Viva would be additional consideration for the promise of Marion to transfer an undivided half interest in the property to Viva and her husband. Pursuant to said oral agreement Viva expended $5,139.63 for improvements and repairs, $2,566 in the upkeep, $2,840.27 for taxes, $559.50 for insurance and $374.46 for St. Francis Wood assessment on said property.

To the joint bank account of Viva and Marion a sum in excess of $72,420.69 was contributed by Viva and Jack whereas the total contribution to said joint bank account by Marion amounted to $1,950. From said joint bank account there was expended on the property in payment of the mortgage and the other items hereinabove stated $20,467.80 over and above the sum of $21,947.80 expended for the personal benefit of Marion as hereinabove stated. Viva fully performed all the terms and conditions of said oral agreement on her part to be performed with the assent of Marion and Marion has accepted all the benefits of said performance. None of said benefits was intended or accepted as a gratuity. Nothing further remains to be done under said oral contract except the conveyance by Marion to Viva and to Viva as executrix of the estate of Jack, of an undivided one-half interest in said property.

Marion breached the agreement for the first time in December, 1947, by refusing to allow Jack to live upon the property. After December, 1947, she further breached the agreement by refusing to convey any interest in the property to Viva and Jack and by denying that Viva and Jack had any interest in said property. It is not true that the cause of action relating to said property is barred by the statute of limitations. (Code Civ. Proc., § 339, subd. 1, or § 343) or by the statute of frauds (Civ. Code, § 1624 or § 852; Code Civ. Proc., § 1971 or § 1973) or by laches in the enforcement of plaintiffs' rights.

From these findings the court made the conclusions that Viva and Jack are the owners of an undivided one-half interest in the San Pablo Avenue property, the record title of which property stands in the name of Marion and which undivided one-half interest in said property is held in trust by Marion for the benefit of Viva and the estate of Jack.

Appellant contends that the findings do not support the conclusion of a resulting or constructive trust and that the action is necessarily barred by the statute of frauds and the

statute of limitations. ▮ The second cause of action, here involved, clearly purported to state a cause of action for the enforcement of an express oral trust. It is alleged in substance that in consideration of certain stated promises of Jack and Viva, Marion agreed that Jack and Viva would own a one-half interest in said property, that Marion would hold said one-half interest in trust for them and would convey it to them on demand and that if the property were sold the proceeds would be divided equally between the parties, and further that Jack and Viva carried out their part of said agreement and spent specified amounts of money pursuant thereto, that and how Marion breached the agreement and refused to recognize the interest of Jack and Viva or to convey it to her with a prayer that the court declare that Marion holds an undivided one-half interest in said real property in trust for plaintiffs and require her to convey said interest to them. ▮ There is no express finding that Marion agreed to hold said interest ''in trust'' for Viva and Jack, but only that she agreed to hold said interest *for their benefit* and a conclusion of law that said interest is held in trust by Marion for their benefit. This makes no difference. ▮ ''Where the owner of property declares that he holds it for the benefit of another, this may be a sufficient manifestation of intention to create a trust by declaring himself trustee of the property, although he does not use the word 'trust.' '' (1. Scott on Trusts, 147-148.) In *Luco* v. *De Toro*, 91 Cal. 405, 417 [18 P. 866, 27 P. 1082], an express trust was held to exist on the basis of such declaration lacking the word trust. ▮ It is then the same whether the court finds the trust as a fact or as a conclusion from the agreement expressly found.

▮ As a rule no express trust in land based on an entirely oral transaction can be enforced (Civ. Code, § 852; *Holtze* v. *Holtze*, 2 Cal.2d 566, 568 [42 P.2d 323].) However such trust is enforceable ''if, with the consent of the trustee, the beneficiary as such enters into possession of the land or makes valuable improvements thereon or irrevocably changes his position in reliance upon the trust.'' (Restatement, Trusts, § 50; *Haskell* v. *First Nat. Bank,* 33 Cal.App.2d 399 [91 P.2d 934] ; 1 Scott on Trusts, § 50, p. 280; 1 Bogert on Trusts, § 92; and compare *Lamb* v. *Lamb*, 171 Cal. 577, 581 [153 P. 913] ; *Feeney* v. *Howard*, 79 Cal. 525, 530 [21 P. 984, 12 Am.St.Rep. 162, 4 L.R.A. 826].) ▮ In this case the findings clearly show that respondents with the consent of

appellant made valuable improvements on the property in reliance upon the trust. As stated before, the parties were found to have agreed in December, 1936, that Viva and Jack would pay off the mortgage on the property and contribute to Marion's personal and living expenses in consideration of a half interest in the property or its proceeds and to have agreed in the spring of 1937 that Viva and Jack would pay for certain repairs, permanent improvements and additions to be made to the property without any new consideration but in consideration only of the interest in the property to which they were already entitled because of the agreements of December, 1936. This 1937 agreement as found was not a binding agreement, which would have required new consideration (*Main St. etc. Co.* v. *Los Angeles Traction Co.,* 129 Cal. 301 [61 P. 937]; *Krobitzsch* v. *Middleton,* 72 Cal.App.2d 804, 808 [165 P.2d 729]), but in its legal significance no more than an express consent of the parties to the making of the improvements at Viva's and Jack's cost in reliance on the trust, effective to take said trust out of the statute in accordance with the quoted rule. The valuable character of the improvements is sufficiently shown by the amount of more than $5,000 found to have been expended for them by Viva.

Appellant relies on cases in which the beneficiary of an oral declaration of trust in land has been denied relief in equity of which the one nearest to the facts of this case is *Wittenbrock* v. *Cass,* 110 Cal. 1 [42 P. 300]. However in that and other cases cited by appellant the so-called part performance exception to the statute of frauds in relation to trusts was not considered and they are therefore without value as authority with respect to that point.

▉ Appellant's contention that the action is barred by the statute of limitation and laches is without merit. The findings that the cause of action is not barred in that manner are normally conclusive on an appeal on the judgment roll where the question whether the findings are supported by the evidence cannot be reviewed. (*Archer* v. *Harvey,* 164 Cal. 274, 276 [128 P. 410]; *Morris* v. *Board of Education,* 119 Cal.App. 750, 752 [7 P.2d 364, 8 P.2d 502].) ▉ But even if there were no such express findings the other facts found would not have justified a conclusion that the action was barred by the statute or by laches. ▉ In case of a voluntary trust the period of limitation commences to run from the time the beneficiary acquired knowledge that the

trust has been repudiated. (*Cortelyou* v. *Imperial Land Co.*, 166 Cal. 14, 20 [134 P. 981] ; *Kornbau* v. *Evans*, 66 Cal.App.2d 677, 684 [152 P.2d 651] ; 25 Cal.Jur. 271.) The findings show that in this case there was no breach or repudiation before December, 1947, whereas the complaint was filed on June 10, 1948. As the action was brought well within the limitation period and no special circumstances are found which would cause the enforcement to be inequitable, there can be no question of laches. (*Stevenson* v. *Boyd*, 153 Cal. 630, 635-36 [96 P. 284, 19 L.R.A.N.S. 525].)

Appellant's argument that the complaint does not state a cause of action for the specific performance of an oral contract to convey real property does not require discussion as the judgment must be upheld as one enforcing an express trust. To an action by a beneficiary against a trustee to enforce an express trust, which action is within the peculiar province of a court of equity (*Bacon* v. *Grosse*, 165 Cal. 481, 492 [132 P. 1027]) the same requirements of pleading do not apply as to a suit for the specific performance of a contract. (25 Cal.Jur. 229 ; 23 Cal.Jur. 416 ; *Juranek* v. *Juranek*, 29 Cal.App.2d 276, 279 [84 P.2d 195].)

Judgment affirmed.

Goodell, J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 23, 1951.