[Civ. No. 7047. Fourth Dist. Mar. 18, 1963.]

CASA COLINA CONVALESCENT HOME FOR CRIP-
PLED CHILDREN, INC., et al., Plaintiffs and Ap-
pellants, v. FRANK E. WIEST et al., Defendants and
Respondents.

Eckhardt & Kearney and Thomas M. Eckhardt for Plaintiffs and Appellants.

Taylor F. Peterson for Defendants and Respondents.

MONROE, J. pro tem.*—The plaintiff, Casa Colina Convalescent Home, is a beneficiary under the will of Genevieve Garcelon, deceased, who died in January 1958 in San Bernardino. The plaintiff Bank of America National Trust & Savings Association is administrator with the will annexed of the estate of the deceased, Genevieve Garcelon. This action was brought for the purpose of impressing a resulting trust upon real estate standing in the name of Margaret Anne Wiest and to impress a like trust upon certain bank accounts. It was claimed that the deceased advanced the money for the purchase of the real property and that, for convenience, title was placed in the name of defendants and respondents. It was further claimed that money in the bank accounts actually belonged to the deceased. The case was tried and the issues were decided in favor of the defendants and judgment was duly entered from which the plaintiffs have appealed.

The contention presented upon this appeal is that the findings and judgment were contrary to the evidence and are unsupported. There is some doubt as to the sufficiency of the compliance with rules on appeal with respect to the presentation of the documents required in the clerk's transcript. However, the parties have urged that the matter be determined upon this appeal and have asked the court to disregard any technical deficiencies. Inasmuch as there is a complete reporter's transcript the court will, therefore, determine the matter upon the merits.

A careful reading of the transcript reveals considerable conflict in the testimony. There is likewise some uncertainty as to the testimony because of the fact that much of the evidence was produced by cross-examination of the defendant Frank E. Wiest. Apparently, by reason of the fact that Mr. Wiest is advanced in years and the transactions involved

---

*Assigned by Chairman of Judicial Council.

extended over a period of more than 20 years, there was some uncertainty as to details, and in some respects his recollection was at fault. However, the transcript reveals that there was substantial evidence to support the conclusions reached by the trial court.

 We are therefore faced by the familiar rule that the power of the court on appeal *"begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact." (*Primm* v. *Primm,* 46 Cal.2d 690, 693 [299 P.2d 231].)

A brief review of the circumstances is in order. Some time before 1937, Mrs. Garcelon was left a widow. She had some funds from her husband's insurance and from his estate, although not a large amount. She invested some of her money in oil deals of a speculative nature with unfortunate results. In 1937 or thereabouts, she sought advice of Mr. Wiest, who was connected with an automobile finance company and who from time to time assisted her as a friend. Mrs. Garcelon determined that it would be to her interest to purchase the real property in question. The property was improved with two duplex rental units and it was anticipated that she could occupy one of the apartments and rent the others. When it came to the actual transaction for the purchase of the property, however, it developed that Mrs. Garcelon was able to raise only $2,300. In connection with setting up the escrow the real estate agent who was making the sale discovered that there were still of record some judgments taken during the life of Mrs. Garcelon's husband, which record might cloud the title to the property. Mrs. Garcelon thereupon requested the assistance of Mr. and Mrs. Wiest in making the transaction. Mrs. Garcelon paid in the $2,300 which was accepted as a downpayment. The property was conveyed to Mr. and Mrs. Wiest as joint tenants and they executed a note and trust deed for $6,000 for the balance of the purchase price. Mrs. Garcelon also signed the note but not the trust deed.

Thereafter, Mrs. Garcelon continued to live on the property until a few years before her death, when she transferrred to various rest homes. For much of the time the rental income of the property was less than enough to keep up the payments and taxes. Mr. Wiest paid whatever was necessary to meet these requirements and also gave money to Mrs. Garcelon for her support. Mr. Wiest made repairs on the property and twice defrayed the expense of putting on new roofs. During the latter part of Mrs. Garcelon's life he paid the expenses of

her care in the rest homes. No accurate account was kept of these expenditures. A bank account was established in which Mr. Wiest deposited funds and in which funds derived from the rentals were likewise deposited. Monies from the bank account were used to defray the expenses referred to.

Appellants contend that under the well esbalished rule, a resulting trust is presumed to result in favor of the person who advances money for the purchase of property. (Civ. Code, § 853; 49 Cal.Jur.2d 186, 187.)

There seems to have been little dispute of the facts heretofore outlined. When Mr. Wiest was examined concerning the purchase of the property he testified in substance as follows:

"She wanted somebody to take the property in their name —I don't think she intended that it should remain her property—The intention was that I take over the obligation—She requested it and the party referred them to me because I had taken care in the past—She did not say that it was her intention to allow the real estate lady to hold the title and that she would remain the owner—The escrow had already been opened—She did not say she was willing to make a gift of the down payment—What she said was the matter of disposition of the property and someplace to live, and the property to remain mine to helping care for her and to stay there. The property would be ours—mine. I had to take care of the obligation, advise her, take care of the maintenance and everything pertaining to the running of the establishment. Everything in general—whatever she required—transportation, errands, advice, taking care of the roof, various things.

Mrs. Garcelon died in 1958. During all the intervening years the title to the property remained in the Wiests and Mr. Wiest assisted in the managing of the property, the collection of the rents, the defraying of any necessary expenses in connection with the maintenance of the property and, in addition, gave money to Mrs. Garcelon to assist in her support. No question was raised with reference to the holding of the property, and during the balance of Mrs. Garcelon's life Mr. Wiest acknowledged and fulfilled his obligation arising out of the transaction.

The trial court, in its written opinion, stated: "From the foregoing, it would appear that the mutual intention of the deceased and defendants was to provide for deceased during her lifetime. Their acts and conduct indicate a mutual intent and purpose to provide her with a home and some income

during the remainder of her life. A resulting trust, to the extent of a life estate in the real property, and the income derived therefrom, was created thereby. Deceased was a beneficiary, and defendants were trustees of such resulting trust during decedent's lifetime. Upon Mrs. Garcelon's death, defendants became vested *eo instante* with title in fee to the real property, and the resulting trust automatically terminated. Under these circumstances, no constructive trust ever came into being during decedent's lifetime, including such time as she may have been incompetent.

"It is well established that a life estate may be the subject and basis of a resulting trust. *Knudson* v. *Adams,* 137 Cal. App. 261 [30 P.2d 608] at p. 269; *Des Granges* v. *Des Granges,* 175 Cal. 67 [165 P. 13].

"During decedent's lifetime, she had available for her use and benefit the real property, and the income therefrom. There is no evidence of a breach of any trust by the defendants during the lifetime of the deceased. She had a home, and her normal living expenses were apparently met. Moreover, during her last illness, the expenses and care of deceased in rest homes was discharged by defendants from their separate funds, or accumulated rental income."

The court also referred to *Rowland* v. *Clark,* 91 Cal.App.2d 880 [206 P.2d 59], as establishing that a life estate may be the subject and corpus of a resulting trust.

It is true that had Mrs. Garcelon, during her lifetime and at least within a reasonable time, questioned the alleged remainder interest of Mr. Wiest, he might have had considerable difficulty in sustaining his position. In *Root* v. *Kuhn,* 51 Cal.App. 600 [197 P. 150], it is held that where one pays the purchase price of real property and the title is taken in the name of another, whereby a resulting trust arises, said trust may not be defeated by evidence of parol arrangements to the effect that the interest of the party advancing the money should be no more than a life estate. The reason for so holding is that the resulting trust arises by operation of law from the fact of the advancement of the purchase price. It is held, therefore, that the trust arises by reason of what the parties do and not by reason of what they say, and to hold otherwise would be in effect creating an express trust by parol. The *Root* case has been cited with approval in *Viner* v. *Untrecht,* 26 Cal.2d 261 [158 P.2d 3]; *Juranek* v. *Juranek,* 29 Cal.App.2d 276 [84 P.2d 195].

However, an entirely different situation arises when the party in whose name the property has been placed at all

times acknowledges the obligations of the trust, performs the duties devolving upon him and holds the property for the benefit of the party advancing the money, during the balance of his life. In *Owings* v. *Laugharn*, 53 Cal.App.2d 789, 793 [128 P.2d 114], which involved an identical situation, the court said: "The trust here was properly proved by parol evidence. Even though it be regarded as an express trust, orally ageed upon, and in this respect running counter to the provisions of section 852 of the Civil Code requiring a writing for that purpose, plaintiff's husband, who might have objected to its validity on that ground, has, instead, carried it out. The defendant is not, thereafter, in position to assert its invalidity on that ground."

The foregoing holding is, of course, in accord with the well established rule that a trust, though created by parol, may become valid and binding when possession is taken or when the same has been fully carried out. (*Mulli* v. *Mulli*, 105 Cal.App.2d 68 [232 P.2d 556]; *Haskell* v. *First Nat. Bank*, 33 Cal.App.2d 399 [91 P.2d 934]; *Maddox* v. *Rainoldi*, 163 Cal.App.2d 384 [329 P.2d 599].)

The appellants sought to make out their case insofar as possible by cross-examination of Mr. Wiest as an adverse witness. Much of the testimony was circumstantial. The examination covered a broad field and much of the testimony had to do with matters of doubtful materiality. There was no detailed inquiry with reference to the actual transaction at the time the property was purchased. The testimony of Mr. Wiest, however, was sufficiently substantial to support the findings and judgment of the trial court. In addition to what he stated with regard to the actual transaction, the evidence was undisputed that he managed the property, paid off the balance of the purchase price, and spent a very considerable portion of his own money in defraying expenses of the property and paying for repairs. The fact that he kept no accurate account of these expenditures during the 20 years is entirely consistent with the agreement and understanding that upon the death of Mrs. Garcelon the property would belong to him. Considerable emphasis was laid by appellant upon the admission by Mr. Wiest that he did not take the taxes on the property as an income tax deduction and did not report the income. It would seem that if Mrs. Garcelon had a life estate in the property and the income therefrom was inadequate to entirely pay the taxes and expenses, any reporting of income or taking of deductions for taxes would probably have been done by her. That question, however, was not inquired

into. It is our conclusion, therefore, that the findings and judgment of the trial court with reference to the real property is supported by substantial evidence and should be affirmed.

■ This leaves only the question with reference to the bank accounts. However, one account was established and some years later it was closed and the second one was established. Both accounts were in the names of Mrs. Garcelon and Mr. Wiest as joint tenants with right of survivorship. In both cases signature cards containing the appropriate joint tenancy agreement were signed by both parties. In both cases the agreement provided that either one might draw upon the account and that upon the death of either one the money remaining in the account would be the property of the survivor.

These accounts appear to have been within the provisions of section 852 of the Financial Code. Obviously, upon the death of Mrs. Garcelon the balance of the account became the property of the survivor. (*Conneally* v. *San Francisco Sav. & Loan Soc.*, 70 Cal.App. 180 [232 P. 755]; *Estate of Nelson*, 104 Cal.App. 613 [286 P. 439]; *Woolsey* v. *Woolsey*, 121 Cal.App. 576 [9 P.2d 605]; *Hotle* v. *Miller*, 51 Cal.2d 541 [334 P.2d 849].)

Appellant complains that prior to the death of Mrs. Garcelon the defendant Wiest withdrew substantial sums of money from the account then existing. The evidence, however, was that any monies from the real property which went into the account were insufficient to pay the expenses of the property and that any balance in the bank account was actually the result of monies deposited by Mr. Wiest. When he was pressed for an explanation of why he withdrew these funds, his answer was, "It was my money." His evidence as to these matters was uncontradicted. The court was therefore entirely justified in finding that the balance in the bank account belonged to Mr. Wiest.

After the death of Mrs. Garcelon, Mr. Wiest conveyed his interest in the real property to his wife. The court properly, therefore, determined that Mrs. Wiest was the owner of the real property.

The judgment is affirmed.

Griffin, P. J., and Brown (G.), J., concurred.