Filed 2/7/14  Kaut v. Kelsey CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| WILLIAM KAUT,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JUDY L. KELSEY,<br><br>        Defendant and Appellant. | A136094<br><br>(Humboldt County<br>Super. Ct. No. DR081241) |

Plaintiff William Kaut sued defendant Judy L. Kelsey for a partition of jointly owned residential property and for an accounting.  After a bench trial, the trial court entered an interlocutory judgment ordering a partition by sale.  On appeal, Kelsey argues that the trial court erred in concluding that the partition was not barred by principles of res judicata and in ruling that she possessed neither a life estate burdening Kaut's interest in the property nor full title to the property.  We reject these arguments and affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

1270 Mill Creek Way in Fortuna (the property) includes a duplex and a single-family residence.  Kelsey's parents bought the property in the 1950s, and, at the time of trial, 73-year-old Kelsey had lived on the property for 60 years.  In 1995, Kelsey and her four siblings each inherited a one-fifth interest in the property after their mother's death.

Kelsey's daughter, Lorrie Cramer (L. Cramer), and son-in-law, Brian Cramer (B. Cramer), then acquired the property from Kelsey and her siblings.  The Cramers paid

1

$26,000 to each of the siblings except Kelsey.  As we discuss below, the consideration Kelsey received for transferring her one-fifth interest in the property to the Cramers was a central issue in this case and in a previous one.

Several years after the Cramers acquired the property, they sought a divorce, and Kelsey brought a quiet title action against them in *Kelsey v. Cramer* (Super. Ct. Humboldt County, 2005, No. DRC 30082).  In April 2003, before the Cramers' divorce was final, B. Cramer transferred his interest in the property to Kelsey by quitclaim deed.  Six months later, L. Cramer cross-complained in *Kelsey v. Cramer* seeking a partition against Kelsey.

*Kelsey v. Cramer* proceeded to trial, and the trial court filed a memorandum of decision in July 2004.  The court concluded that Kelsey transferred her one-fifth interest to the Cramers and, in exchange, should have been paid $26,000 but was not.  The court also found that while Kelsey did receive free rental of one unit, "[s]he did not, however, have any ownership interest in the property"—i.e., she did not have a life estate—"from 1998[1] through April of 2003," when B. Cramer transferred his interest to her.  Because B. Cramer's interest "was worth substantially more than the $26,000.00 owed, plus any reasonable rate of interest," plus other amounts claimed by Kelsey, the court "award[ed] nothing on [Kelsey's] complaint.  On [L. Cramer's] cross-complaint, the court [found] that no award should be made, as [B.] Cramer's transfer of title to [Kelsey] satisfied the debt owed on the complaint."  The court also held that L. Cramer was entitled to half of the rental income from April 2003 to date.  The court entered judgment in March 2005.

Meanwhile, in September 2004, L. Cramer transferred her interest in the property by quitclaim deed to her then-boyfriend, William Kaut.  Subsequently, she assigned to Kaut her interest in the rental income from the property between April 2003 and September 2004.  Kaut immediately wrote to Kelsey demanding his half of the rental income.  Kelsey received the letter, but she did not answer it.  Kelsey continued to live on

---

[1] The reference to 1998 appears to be a mistake because Kelsey had transferred her interest in the property to the Cramers by 1996.

2

the property, and she rented and managed the units she did not occupy, arranged for repairs, and paid the bills. But she never paid Kaut any rent or shared any rental income with him.

Kaut brought the instant action in December 2008. He sought a partition in kind or a partition by sale, an accounting, and reimbursement of half of the rental income from April 2003 onward. Kelsey filed a cross-complaint that included a cause of action contending that she had a life estate burdening Kaut's interest in the property. This cause alleged that her life estate arose through a resulting trust. Later, she added a cause alleging that she acquired title to the property through adverse possession. A receiver was appointed and issued a final report accounting for the rental income potentially owed to Kaut.

After trial, the trial court issued a memorandum of decision concluding that Kelsey and Kaut each owned half of the property, that Kelsey owed Kaut approximately $7,000 for half of the property's net income from May 2003 through August 2011, and that Kaut should prospectively receive half of the net income from the property. The court rejected Kelsey's claims that she had a life estate burdening Kaut's interest in the property by virtue of a resulting trust and that she possessed title through adverse possession. Instead, the court concluded that the Cramers had "agreed that Kelsey receive free rental for her occupancy of one unit of the property in return for not being paid $26,000 for her one[-]fifth interest and her management of the property." The court ordered the property "partitioned, either by appraisal, division or sale with division of the proceeds," noting that partition by appraisal "appear[ed] to be the best method." It also required the parties to each pay half of the receiver's fees and costs.

Two months after the memorandum of decision was filed, the trial court entered an interlocutory judgment that Kaut was "entitled to Partition by Sale of the subject property located at 1270 Mill Creek Way, and a subsequent 50/50 division of the proceeds following the sale. The property should be sold by private sale or public auction." The interlocutory judgment also awarded approximately $7,000 to Kaut while preserving the

3

opportunity to award additional fees, costs, and interest yet to be determined. Kelsey filed a timely notice of appeal.[2]

## II.
### DISCUSSION

A.    *The Appeal Will Not Be Dismissed Due to Kelsey's Failure to Move to Clarify the Memorandum of Decision or Due to Briefing Irregularities.*

Kaut contends that Kelsey's appeal should be dismissed because Kelsey failed to move to clarify the trial court's memorandum of decision and because her opening brief is deficient in several ways. We decline to dismiss Kelsey's appeal for these reasons.

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) If, however, "a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court . . ., it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue." (Code Civ. Proc., § 634.)[3] The import of this provision is that by not moving to clarify the memorandum of decision, Kelsey waived "the right to claim on appeal that the [decision] was deficient" because of any "omissions or ambiguities" that she could have brought to the trial court's attention before appealing. (*In re Marriage of Arceneaux*, at pp. 1133-1134.) But the provision does not mean that Kelsey waived entirely her right to appeal.[4] Because Kelsey argues on appeal about

---

[2] Interlocutory judgments in partition actions are appealable. (Code Civ. Proc., § 904.1, subd. (a)(9).) Although Kelsey's notice of appeal predates the filing of the interlocutory judgment by four days, we treat the notice "as perfecting [a] valid, if premature, appeal[] from the judgment entered shortly thereafter." (*Grossman v. Davis* (1994) 28 Cal.App.4th 1833, 1836, fn. 1.)

[3] All further statutory references are to the Code of Civil Procedure.

[4] In her reply brief, Kelsey refers to a recent "supplemental judgment (or ruling)" issued by the trial court after litigation of "a clarification motion." No such document appears in the record, however, and neither party has moved to augment the record with it under California Rules of Court, rule 8.155(a).

4

issues other than omissions or ambiguities in the decision that could have been corrected if they had been brought to the attention of the trial court, we decline to dismiss her appeal for her failure to seek a clarification of the decision.

Kaut also urges us to dismiss the appeal on the basis that Kelsey's opening brief is deficient because it fails to include a statement of appealability, fails to identify the applicable standards of review, and fails to include adequate citations to the record. We will consider the merits of Kelsey's claims even though we agree that Kelsey's brief does not comply with the applicable rules and standards.

Kaut's first argument about the inadequacy of Kelsey's brief is that it contains no statement of appealability. California Rules of Court, rule 8.204(a)(2)(B) requires an opening brief in a civil appeal to "[s]tate that the judgment appealed from is final, or explain why the order appealed from is appealable." Although Kelsey's brief fails to comply with this requirement, the trial court's judgment is appealable because it is "an interlocutory judgment in an action for partition determining the rights and interests of the respective parties and directing partition to be made." (§ 904.1, subd. (a)(9).) We exercise our discretion to "[d]isregard [Kelsey's] noncompliance" with the rule. (Cal. Rules of Court, rule 8.204(e)(2)(C).)

Kaut also argues that Kelsey's brief fails to identify the applicable standards of review. Citing *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465, he contends that a "failure to acknowledge the proper scope of review is a concession of a lack of merit of the appeal." Although we agree that Kelsey repeatedly fails to identify the applicable standard of review, we again exercise our discretion by declining to dismiss the appeal. (See *Sonic*, at pp. 465-466 [considering claim's merits even though appellant did not identify standard of review].)

Lastly, Kaut contends that the appeal should be dismissed because Kelsey's opening brief does not contain proper citations to the record. California Rules of Court, rule 8.204(a)(1)(C) requires all briefs in a civil appeal to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." But, in fact, *both* parties fail to provide complete record citations, and

5

this failure has made review especially difficult because several matters mentioned in the briefing do not appear in the record at all.  We remind both parties that it is their responsibility, not ours, to identify the portions of the record that support their assertions.  (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738.)  Nonetheless, and despite these shortcomings, we decline to dismiss the appeal and will address the substantive arguments asserted.  (See Cal. Rules of Court, rule 8.204(e)(2)(C).)

B.      *Kaut's Partition Claim Is Not Barred by Principles of Claim Preclusion.*

Kelsey contends that the trial court erred by ruling that Kaut's partition claim was not barred by principles of res judicata.  She argues that res judicata barred the claim because the claim was previously rejected in *Kelsey v. Cramer* when the court held in that case "that no award should be made" on L. Cramer's cross-complaint, which included a partition cause of action.  We disagree.

"Res judicata, or claim preclusion, prevents relitigation of the same cause of action between the same parties or parties in privity with them." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.)  As used in this context, "cause of action" means "the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798.)  A judgment in favor of a party prevents "litigation of the same cause of action" in a subsequent suit, including "all claims based on the same cause of action" that could have been brought previously but were not. (*Mycogen*, at pp. 896-897.)  Res judicata thus avoids " ' "piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." ' " (*Id.* at p. 897.)

"Res judicata bars a cause of action that was or could have been litigated in a prior proceeding if '(1) the present action is on the same cause of action as the prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the parties in the present action or parties in privity with them were parties to the prior proceeding.' " (*Federal Home Loan Bank of San Francisco v. Countrywide Financial Corp.* (2013) 214 Cal.App.4th 1520, 1527.)  The party asserting that a claim is barred

6

"has the burden of establishing each element of res judicata." (*Ibid.*) Whether res judicata applies is reviewed de novo. (*Noble v. Draper* (2008) 160 Cal.App.4th 1, 10.)

Although the parties' briefing and the trial court's memorandum of decision confuse the two doctrines, res judicata is distinct from collateral estoppel, or issue preclusion, which " 'precludes relitigation of issues argued and decided in prior proceedings.' " (*Mycogen Corp. v. Monsanto Co.*, *supra*, 28 Cal.4th at pp. 896-897, fn. 7.) In her briefing, Kelsey repeatedly refers to "issue preclusion" and whether the two cases involve the same "issues," but her argument and authorities make clear that she relies on the doctrine of res judicata in arguing that Kaut's request for a partition should have been barred. Similarly, the trial court's memorandum of decision concludes that "res judicata" does not bar Kaut's partition action because the "issues decided" in the prior suit were "not . . . the same" as those presented in this case. This finding would only be relevant in determining whether collateral estoppel applies. (See *Mycogen*, at p. 896.)

Although we need not and do not resolve the issue in this case, we begin by noting that res judicata is rarely, if ever, available to bar a cotenant's partition claim. "A co-owner of property has an absolute right to partition unless barred by a valid waiver" (*LEG Investments v. Boxler* (2010) 183 Cal.App.4th 484, 493) or "estoppel [or] similar equitable defenses." (*Thomas v. Witte* (1963) 214 Cal.App.2d 322, 326; see § 872.710, subd. (b).) Because of this absolute right, "[t]he statute of limitations never bars relief between tenants in common in an action of partition."[5] (*Adams v. Hopkins* (1904) 144 Cal. 19, 27.) Given cotenants' rights to partition at any time, the rationale behind res judicata—that all claims seeking redress of a particular harm should be brought in a single proceeding—has less force in partition actions. (See *Boeken v. Philip Morris USA,*

---

[5] The trial court adopted Kaut's argument that the action " 'accrued only after Kelsey continuously [*sic*] refused to remit 50% of the rental proceeds to Kaut,' " and thus that " 'the issue of whether a Partition is proper, given the passage of time and the non-payment of rental proceeds to Kaut, has not been adjudicated . . . [.]' " The court's ruling was mistaken to the extent it suggested that the timeliness of Kaut's partition claim turned on when Kaut demanded his portion of the rental income from Kelsey.

*Inc.*, *supra*, 48 Cal.4th at p. 798.)  We reject Kelsey's argument that the decision in *Kelsey v. Cramer* forever barred a partition claim, and would have done so even if L. Cramer had not sought a partition in *Kelsey v. Cramer* because she *could* have sought one in that case.

We ultimately need not decide whether res judicata is ever available to bar a cotenant's request for a partition because we conclude here that, even assuming it is, Kelsey failed to sustain her burden of establishing that L. Cramer's partition claim in *Kelsey v. Cramer* resulted in a judgment on the merits.  "A judgment is on the merits for purposes of res judicata 'if the substance of the claim is tried and determined.' " (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 77.)  This requirement stems from the principle that a party should be barred from litigating a claim that it " ' "has litigated, or had opportunity to litigate" ' " in a previous action.  (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 182; 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 370, p. 994.)  Here, we cannot determine whether L. Cramer's partition cause of action was actually litigated on the merits.  The only relevant evidence admitted below was the *Kelsey v. Cramer* cross-complaint, memorandum of decision, and judgment, but neither the memorandum of decision nor the judgment mentions L. Cramer's partition claim.  We cannot harmonize our presumption that the *Kelsey v. Cramer* court fulfilled its duty to "determine whether the plaintiff has the right to partition" (§ 872.710, subd. (a)) with the memorandum of decision's and judgment's silence about the partition claim.  Moreover, in its memorandum of decision, the *Kelsey v. Cramer* court reasoned that "no award should be made" on the cross-complaint because "[B.] Cramer's transfer of title to [Kelsey] satisfied the debt owed on the complaint."  This reasoning has nothing to do with whether a partition was appropriate, and it suggests that the court did not decide the merits of the partition claim.  We conclude that Kelsey has not presented sufficient evidence that L. Cramer's partition claim was judged on the merits, and we affirm the trial court's determination that res judicata does not bar Kaut's partition action.

*C.* *The Evidence Does Not Support Kelsey's Claim that She Has a Life Estate in the Property Through a Resulting Trust.*

Kelsey contends that she obtained a life estate in the property by virtue of a resulting trust when she transferred her one-fifth interest to the Cramers and that this life estate encumbers Kaut's interest in the property. Instead of arguing that her life estate bars a partition of the property, however, she contends that the life estate bars a partition by sale and entitles her to choose her half of the property.[6] We reject this claim and conclude that Kelsey has failed to establish that she obtained a life estate through a resulting trust.

"A resulting trust arises by operation of law from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest," and it thus effectuates the parties' inferred intent. (*Lloyds Bank California v. Wells Fargo Bank* (1986) 187 Cal.App.3d 1038, 1042 ; accord *Estate of Yool* (2007) 151 Cal.App.4th 867, 874.) Generally, " 'a resulting trust arises in favor of the payor of the purchase price of the property where the purchase price, or a part thereof, is paid by one person and the title is taken in the name of another.' " (*Lloyds Bank*, at p. 1043.) " 'One who claims a resulting trust in land must establish clearly, convincingly and unambiguously, the precise amount or proportion of the consideration furnished by him [or her].' " (*Id.* at p. 1044.) The statute of frauds does not bar parol evidence to prove a resulting trust (*Jones v. Gore* (1956) 141 Cal.App.2d 667, 673), and such a trust may

---

[6] We note that "[p]artition in kind is favored [and] . . . '[f]orced sales are strongly disfavored' " (*Butte Creek Island Ranch v. Crim* (1982) 136 Cal.App.3d 360, 366) and that unless the parties consent to partition by sale, a court must determine that this course "would be more equitable than division of the property" before ordering a sale. (§ 872.820; see also § 872.810.) No such determination was made here and the record does not reveal why the interlocutory judgment ordered partition by sale after the memorandum of decision suggested partition by appraisal. We do not consider whether partition by sale was correct because Kelsey has not raised the issue: while she mentions the presumption in favor of partition in kind in her statement of issues, she never argues for reversal on the basis that partition by sale is improper because the trial court did not make the required findings.

9

encompass a life estate. (*Casa Colina Convalescent Home v. Wiest* (1963) 214 Cal.App.2d 161, 165.)

Whether a resulting trust should be imposed is a mixed question of law and fact. We review the court's factual findings for substantial evidence and the application of the law to those facts de novo. (See *CUNA Mutual Life Insurance Co. v. Los Angeles Metropolitan Transportation Authority* (2003) 108 Cal.App.4th 382, 391.)

The trial court's memorandum of decision does not mention the resulting-trust theory. Instead, it refers to the factual findings in *Kelsey v. Cramer* and concludes that "[t]he evidence does not support a finding that Kelsey has a life estate burdening Kaut's interest in the property" but rather supports "a finding that [the Cramers] agreed that Kelsey receive free rental for her occupancy of one unit of the property in return for not being paid $26,000 for her one[-]fifth interest and her management of the property." The *Kelsey v. Cramer* court's determination that Kelsey had no interest in the property until April 2003 suggests that issue preclusion (collateral estoppel) may bar Kelsey from relitigating whether she obtained a life estate when the Cramers bought the property. On appeal, however, while Kaut suggests that collateral estoppel applies, he does not even identify that doctrine's elements, much less explain how they may have been met. We therefore consider the merits of Kelsey's contention that she has a life estate encumbering Kaut's interest in the property through operation of a resulting trust.

Kelsey argues that she gave the Cramers her one-fifth interest in the property in exchange for a life estate. She claims that giving the Cramers this interest allowed them to avoid providing a down payment as "the credit union didn't require one because they were given credit for [Kelsey's one-fifth] interest in the property." A resulting trust could only arise in Kelsey's favor, however, if she had provided part of the consideration used to purchase the siblings' interests. (*Lloyds Bank California v. Wells Fargo Bank*, *supra*, 187 Cal.App.3d at p. 1043 [resulting trust normally arises " 'where the purchase price, or a part thereof, is paid by one person and the title is taken in the name of another' "]; *Lezinsky v. Mason Malt W. D. Co.* (1921) 185 Cal. 240, 251 [resulting trust

10

arises where "one has advanced the consideration wherewith to make a purchase in the name of the other"].)

At best, Kelsey's argument is that the one-fifth property interest that Kelsey transferred to the Cramers was used by the Cramers to obtain for themselves a loan that was the consideration used to purchase the siblings' interests. This argument acknowledges that the one-fifth interest itself was not the consideration used to purchase the siblings' interests, and no evidence was presented that the loan was taken out in Kelsey's name, that Kelsey had any obligation to repay it, or that she otherwise provided the funds used to purchase the siblings' interests. Accordingly, no resulting trust arose in Kelsey's favor because the Cramers used their own funds, not Kelsey's, to purchase the siblings' interests. Kelsey's resulting-trust theory provides an insufficient basis for us to disturb the trial court's factual finding that the arrangement between Kelsey and the Cramers was never intended to give Kelsey a life estate in the property.

D.      *The Evidence Does Not Support Kelsey's Claim that She Acquired Either Full Title to or a Life Estate in the Property Through Adverse Possession.*

Kelsey alternatively argues that she acquired either full title to the property or a life estate encumbering Kaut's interest in the property by virtue of adverse possession. We disagree.

To obtain title through adverse possession, a party must establish five elements: "1) Possession under claim of right or color of title; 2) actual, open, and notorious occupation of the premises in such a manner as to constitute reasonable notice to the true owner; 3) possession which is adverse and hostile to the true owner; 4) possession which is uninterrupted and continuous for at least five years; and 5) payment of all taxes assessed against the property during the five-year period." (*Buic v. Buic* (1992) 5 Cal.App.4th 1600, 1604; see also § 325.)

If, as here, a claimant asserts adverse possession against a cotenant, " ' " 'additional principles become operative' " ' " because " ' " '[e]ach tenant in common has a right to occupy the whole of the property [and] . . . each may assume that another in exclusive possession is possessing for all and not adversely to the others.' " ' "

11

(*Hacienda Ranch Homes, Inc. v. Superior Court* (2011) 198 Cal.App.4th 1122, 1128.) A cotenant seeking to acquire title " ' " ' "must bring home or impart notice to the tenant out of possession, by acts of ownership of the most open, notorious and unequivocal character, that [she] intends to oust the latter of his interest in the common property," ' " ' " which necessitates a stronger showing than that " ' " ' "required to establish a title by adverse possession in a stranger." ' " ' " (*Ibid.*)

Whether adverse possession has been established is a question of fact. (*Sevier v. Locher* (1990) 222 Cal.App.3d 1082, 1087.) The trial court concluded that Kelsey had failed to establish that she acquired Kaut's title through adverse possession because her occupation of the property was "not . . . adverse and hostile to Kaut," there was no evidence that she "claimed by occupancy of the property that she was the sole owner," and the property's joint income was used to pay the taxes.

Initially, we question whether Kelsey properly preserved her claim that she acquired a life estate through adverse possession. The trial court's decision rejected the conclusion that Kelsey acquired title to Kaut's *entire* interest in the property through adverse possession. Given the limited record before us, we cannot tell whether Kelsey presented in the trial court the additional argument she now makes. Moreover, Kelsey has cited no authority for the proposition that a life estate may be acquired by adverse possession or that, if she has such an interest encumbering Kaut's ownership interest, a partition cannot be ordered. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [failure to support a contention with "reasoned argument and citations to authority" waives it].)

But even assuming that Kelsey properly preserved both of her adverse-possession claims—that she acquired either a full interest or a life estate encumbering Kaut's interest—we perceive no reason to overturn the trial court's determination. Kelsey argues that the trial court's finding that joint income was used to pay the taxes assessed on the property has no support because there was no evidence that Kaut had his name on or had access to any bank account in which the income was held. She cites no evidence in the record, however, to support her claim that she used her own money to pay those

12

taxes. Nor does she provide record citations supporting her cursory contention that the other four elements of adverse possession are met.

In the section of her opening brief discussing adverse possession, Kelsey contends that the doctrine of unclean hands defeats Kaut's "entire action." She claims that L. Cramer deeded her interest in the property to Kaut in order to avoid her child-support obligations to B. Cramer and that the deed is therefore fraudulent. We granted Kelsey's unopposed motion to augment the record with the abstract of judgment from Napa County that she relies on without determining that document's relevance. The abstract reflects a child-support judgment entered in June 2003 (several years before the trial in this case). Even if it were appropriate to consider this evidence for the first time on appeal, Kelsey does not cite any authorities to support her argument that the doctrine of unclean hands applies. The argument is therefore waived.[7] (See *Benach v. County of Los Angeles*, *supra*, 149 Cal.App.4th at p. 852.)

E.     *Kelsey Cannot Challenge Portions of the Memorandum of Decision Not Reflected in the Interlocutory Judgment.*

Kelsey argues that the trial court's reference to an agreement between her and Kaut regarding property management must be stricken because no such agreement exists. She also argues that the court should not have ordered her to pay half of the receiver's fees and costs.[8] We reject both contentions because the references to an agreement and to payment of the receiver appear only in the memorandum of decision, which is not appealable.

---

[7] In her reply brief, Kelsey argues that Napa County must be joined as a real party in interest before the property can be sold. This contention is waived because Kelsey did not raise it in her opening brief. (See *People v. Lewis* (2008) 43 Cal.4th 415, 536, fn. 30.) We express no views on Napa County's possible interest or participation in future proceedings.

[8] Kaut construes Kelsey's claim to be that the court should not have appointed a receiver in the first place. We disagree, although Kaut is correct that Kelsey would have had to appeal from the order appointing the receiver if she had wanted to assert such a claim. (See § 904.1, subd. (a)(7) [order appointing receiver is appealable].)

13

While in certain circumstances a statement of decision may be treated as appealable, "a statement of decision is not treated as appealable when a formal order or judgment does follow." (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901.) While the memorandum of decision states that "Kelsey's agreement concerning management of the property shall terminate when Kaut's ownership interest in the property is ended," the interlocutory judgment mentions nothing about an "agreement." Similarly, while the memorandum of decision directs that the parties split the receiver's fees and costs, the judgment does not mention the receiver. The memorandum of decision also refers to an "order filed concurrently" approving the receiver's final report but that order does not appear in the record and Kelsey has not appealed from it.[9] Finally, the judgment attaches the memorandum of decision as an exhibit but does not incorporate it or otherwise rely on it. Kelsey cannot challenge rulings in the memorandum of decision that were not given effect in the judgment. (See *ibid.* [statements of decision are not usually appealable because "courts typically embody their final rulings not in statements of decision but in orders or judgments"].)

## III.
### DISPOSITION

The judgment is affirmed. Kaut is awarded his costs on appeal.

---

[9] We express no opinion on that order's existence or whether Kelsey could perfect an appeal of issues related to it.

                                      _____

                                      Humes, J.

We concur:

_____

Reardon, Acting P.J.

_____

Rivera, J.